RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SEVERE RECORDS, LLC; CHRIS SEVIER,
　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

JOHN RICH; SHANNA CROOKS; MUZIK MAFIA,
LLC; JOHN D. RICHAFELLA PUBLISHING,
　　　　　　*Defendants-Appellees.*

No. 09-6175

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00654—William J. Haynes, Jr., District Judge.

Argued:  July 21, 2011

Decided and Filed:  September 23, 2011

Before:  KENNEDY, SILER, and McKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Mark Christopher Sevier, Nashville, Tennessee, for Appellants.  Cynthia
S. McKenzie, McKENZIE HYDE, PLC, Nashville, Tennessee, for Appellees.
**ON BRIEF:**  Mark Christopher Sevier, Nashville, Tennessee, Jay S. Bowen, BOWEN
& UNGER, PLC, Nashville, Tennessee, for Appellants.  Cynthia S. McKenzie,
McKENZIE HYDE, PLC, Nashville, Tennessee, William T. Ramsey, NEAL &
HARWELL, PLC, Nashville, Tennessee, J. Matthew Blackburn, CORNELIUS &
COLLINS, LLP, Nashville, Tennessee, for Appellees.

———————————

## OPINION

———————————

　　CORNELIA G. KENNEDY, Circuit Judge.  Plaintiff Mark Christopher "Chris"
Sevier authored a song entitled "Better."  Defendant Shanna Crooks recorded the song
and, because they were pleased with the results, they co-authored and recorded a second

1

song, "Watching Me Leave." Their relationship then collapsed, Crooks signed as a recording artist with unrelated recording and management companies, and various accusations and altercations followed, precipitating this action. Sevier and his recording company, Severe Records, LLC (collectively, "Plaintiffs") filed suit, alleging what Sevier characterized as a "novel" claim of copyright infringement against Crooks and others for preventing Plaintiffs from commercially exploiting the two songs through threats contained in cease-and-desist letters and requests to music retailers that the songs not be offered for sale. Plaintiffs also sought a declaratory judgment regarding the authorship of the songs and ownership of the copyrights to the two songs. The district court dismissed the amended complaint for failing to state a claim of copyright infringement and declined to consider Plaintiffs' pendent state law claims or issue a declaratory judgment. For the reasons that follow, we **AFFIRM** the district court's dismissal of the copyright infringement claim and **REVERSE** its dismissal of the declaratory judgment claim.

## FACTUAL BACKGROUND[1]

Sevier, in addition to being a licensed attorney[2] and serving in the Tennessee Army National Guard Judge Advocate General Corps, works in the music-recording industry and is the managing member of Severe Records. He characterizes himself as a "highly prolific songwriter and professional music producer who has written and produced hundreds of works."

In 2002, Sevier authored the music and lyrics for "Better," recorded the song, and began pitching the song to recording artists. Crooks is a recording and performing artist with whom Sevier entered into an oral agreement to record "Better." Both expected to commercially and noncommercially benefit from their relationship through exploitation of the song. According to Sevier, their oral agreement was structured to make them both

---

[1]This factual summary is based on allegations in Plaintiffs' amended complaint and exhibits attached thereto, all presumed true for the purposes of evaluating the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

[2]Sevier is the attorney-of-record for Severe Records, the author of the complaint and the amended complaint, and argued on behalf of Plaintiffs on appeal.

authors of the copyright in the sound recording they created together. Sevier claimed that he planned to give Crooks half of the income generated through the commercial exploitation of the version of the song they collectively recorded. In exchange for Sevier's time, labor, and equipment, he was permitted to use Crooks's name, likeness, and photographs in connection with the works they created. Sevier mixed and edited "Better" and gave Crooks a copy for her to use and exploit, as well as to aid her in preparing to record a full-band version of the song.

Crooks and Sevier were pleased with the response they received to their recording of "Better," and decided to record another song together. This time, they opted to write and record a new song because Sevier was better acquainted with Crooks's vocal talents. So, in Spring 2005, Sevier authored the music for "Watching Me Leave" and he and Crooks coauthored the song's lyrics. They then made a sound recording of the composition.

Crooks included the recordings of "Better" and "Watching Me Leave" on a compilation she shopped to third-party record companies. Sevier alleges that this helped her secure a publishing and management deal with defendants John Rich and/or Richafella Music Publishing and/or Godfather Music, and also a management deal with defendant Muzik Mafia, LLC (all collectively with Crooks, "Defendants"). In signing with these entities, Crooks assigned her copyright ownership in her songs, purportedly including "Better" and "Watching Me Leave," to Rich and/or his publishing company.

Severe Records also sought to profit from the two songs during the Spring of 2005 by commercially releasing them through retailer CD Baby's online store and by having the songs digitally distributed to third-party digital music stores. Sevier informed Crooks of the release and told her that he would account to her for prorated portions of any sales.

Then the parties' relationship collapsed.

On October 22, 2005, Rich sent an email to members of Muzik Mafia[3] and other members of the music industry entitled "Illegal Activity," accusing Sevier of "illegally selling music," including that of Crooks.  On October 24, 2005, through counsel, Muzik Mafia sent Sevier a cease-and-desist letter concerning music by artists including Crooks that was available for sale via CD Baby, was featured on the social network MySpace.com, and was available on Sevier's website.  The cease-and-desist letter accused Sevier of copyright infringement for the sale of unauthorized recordings and of false endorsement.  Sevier responded through counsel.  Muzik Mafia's counsel emailed Sevier again on October 28, 2005 reiterating its demands and referring Sevier to the Copyright Act and Lanham Act to elucidate how Sevier's actions constituted copyright infringement and false endorsement.

Several months later, on May 4, 2006, Rich emailed Sevier, informing Sevier that he would not grant Sevier a licence to sell or distribute any of Crooks's music.  Sevier responded that he was a co-author of the songs in question and could exploit them for commercial use as a co-owner.  He also referred to Crooks's contributions to the songs in question as *de minimis*, particularly in regard to "Better."  Rich responded caustically and threatened to send Sevier another cease-and-desist letter.  Sevier responded that "I could technically come after you under unjust enrichment, quantum meruit, tortous [sic] interference, and infringement (if [sic] you did not allow me to exercise my exploitation rights), but that would be a drag, and I've got way too much respect for leaders like you."  Rich stated in response that he would be "monitoring [Sevier's] activity closely with Shanna Crook's music regarding sales and distribution" and that Sevier should "go ahead and file a lawsuit against [Rich] and [his] company [Muzik Mafia] . . . [and take] this [dispute] to court."  On May 6, 2006, in an email addressed to Rich, but sent to Rich's counsel, Sevier warned Rich not to "commit intentional defamation."

In May 2006, Sevier recorded a certificate of registration for "Better" and "Watching Me Leave" with the United States Copyright Office.  Sevier listed himself

---

[3] According to the amended complaint, Muzik Mafia is both a Tennessee corporation and a formal and informal network of agents and fans of the company.

and Crooks as the co-authors of the songs. He noted that he was the "co-owner of the sound recording, music, words, art work compilation" and that Crooks was the "co-owner of the sound recording, & works."

Near the end of August 2006, an agent of Muzik Mafia called CD Baby on behalf of Rich, Muzik Mafia, and Crooks and demanded that the store permanently remove and disable access to Crooks's works that Sevier had licensed to CD Baby for commercial exploitation, asserting that Plaintiffs had acted illegally and that use of the works was not authorized by the actual owners. CD Baby officials contacted Sevier and determined that Plaintiffs' use of the works was legitimate and Muzik Mafia's assertions were without merit. Though CD Baby ultimately elected not to remove the challenged works from their stores, for a period of time, the songs were unavailable for purchase.

On September 12, 2006, Sevier, after hearing from several of his current and prospective artists that Crooks was talking about him, contacted Crooks and demanded that she stop defaming him, stating that he "did not believe in her as an artist anymore as a result of her self-entitlement/narcissistic syndrome" and that any license he had orally extended to her was revoked. Crooks responded the next day that she would not be his friend, thought he was a good songwriter, but that he was "poison in this industry." In a separate message, she wrote that Sevier was "developing quite a reputation in this town" after speaking to someone else in the Nashville music industry.

Also in September 2006, Sevier made several attempts to account to Rich's accountant for proceeds owed to Crooks from his exploitation of the two songs. In November 2006, when Sevier met with Rich's accountant, the accountant told Sevier that if Plaintiffs did not conform to Defendants' wishes, they would see to it that "music industry members would not work with Plaintiffs."

On October 2, 2006, a Muzik Mafia agent emailed Plaintiffs asking if they had "any concerns." Sevier responded by email that same day, warning the agent that he was "either the sole author or a co-author of the copyrights vested in either or both song recordings or underlying compositions," and that he had registered his ownership interests in the songs with the copyright office. He further threatened legal action if

Muzik Mafia infringed on Severe Records's property rights.  Finally, Sevier accused Muzik Mafia of "attempting to prevent [Plaintiffs] from exploiting [their] right of distribution under [17 U.S.C. §] 106 . . . [and of] initiating schemes and activities to have my co-authored worked [sic] removed from digital stores . . . ."  Sevier characterized these actions as "willful and intentional infringment [sic] and . . . malicious."  In response, Muzik Mafia's agent asserted that Plaintiffs did not have ownership of the photograph of Crooks displayed on Severe Records's website.  Sevier responded that his use of the photograph qualified as "fair use" and reiterated his claim of authorship of the songs in question.

On April 26, 2007, Muzik Mafia's attorney again sent Sevier a cease-and-desist letter, alleging that Sevier was distributing "bootleg" compact discs and unauthorized digital downloads of performances by Crooks through the internet.  The letter listed the penalties associated with willful copyright infringement and also accused Plaintiffs of engaging in false endorsement under the Lanham Act and of engaging in deceptive business practices under state law.

At some point, Sevier switched from CD Baby to IODA for the digital distribution of music, including the musical works created with Crooks.  Licensing agreements between IODA and MySpace.com subsequently created the opportunity for Plaintiffs to place digital stores on MySpace.com websites.  On July 11, 2007, Plaintiffs did just that, and placed a digital store on Crooks's MySpace.com website.  That same day and in response to the newly appearing digital store, Crooks posted a note on her MySpace.com webpage with the title "WARNING!!!  Illegal music being sold on my page."  Her post continued:

> Hey Everyone, I apologize for the inconvenience this post may cause.
> I went to my myspace page today and to my astonishment saw I had music for sale!
> I don't know how this music got there but I had nothing to do with it.
> There is a guy named Chris Sevier who writes with artists, records "demo's" of the songs they write and then without the artists'

knowledge packages them up and sells them using unauthorized pictures, bio's, etc.

I co-wrote/recorded and payed for two songs with him, "Watching Me Leave" and "Better" a few years back. Chris Sevier immediately designed some fancy graphics and proceeded to sell them on every music site and through every avenue he could find.

He's continuing to do so after countless times of me asking him to stop. He claims it's legal since he supposedly "owns" the recordings, but this is clearly wrong, unethical and down right dirty.

Well, it looks like good ole Chris is trying to earn a buck of my myspace page now. PLEASE DON'T GIVE IT TO HIM! In the very near future I will have my own music available and I promise you it will be music that will represent who I am as a singer/songwriter, as opposed to these demo's being sold by him.

If you are an artist, BEWARE of people like Chris. Sadly there really are snakes out there that will exploit and take advantage of you with no regard for business ethics, artists' wishes, or even their own reputation in order to make a buck.

Through the MySpace.com social network website, this statement was disseminated to approximately 15,000 people. Many comments were posted on Crooks's MySpace.com website disparaging and threatening Sevier. Sevier claims that he lost significant business as the result of Crooks's statements on her MySpace.com webpage.

On August 23, 2007, Sevier emailed Muzik Mafia, Rich, and Crooks, stating:

You are notified to withdraw every statement made concerning Chris Sevier and Severe Records LLC on all websites or other internet areas, such as weblogs, you have posted, provided, authored, or in any way contributed content to between the dates of January 2005 to August 2007 as all of the statements are not true and [are] defamatory.

Demand is also made that you immediately publish a correction with a full and complete, unqualified apology on all internet areas containing the defamatory content. . . .

In the event you choose to ignore this demand, both general and punitive or special damages will be claimed in any civil action against you. . . .

On August 26, 2007, Rich responded:

To be guilty of "defaming" someone, you have to say things about them that are untrue. Everything Shanna [Crooks] has said about you is accurate and truthful.

> If you had not treated her, and other members of the MUZIK MAFIA so unethically, there would be nothing for anyone to say about you, good, bad or otherwise. You have always behaved like a bottom feeder, and you still are. Your business practices are shady at best, and you are not to be trusted. You will receive an apology from no one. People like you are bad for our business. Period. You degrade the level of quality and reputation we have EARNED in the music business, as being people with undying respect for the writers and artists, and the music they make. Everything about your practices in this town is rather disgusting to us to be perfectly honest. Keep sending us your humorous emails though, we REALLY enjoy getting those!! As always, we wish you the best of luck fighting for your share of the table scraps.

On or about June 25, 2008, Crooks contacted digital music stores, including Apple's iTunes Music Store, where the two songs were posted, and alleged that Plaintiffs did not have the rights to offer the songs for sale. The songs were subsequently removed from the iTunes Music Store. IODA then removed the songs from every digital music store to which it had made them available. On December 17, 2008, IODA terminated its distribution agreement with Sevier.

### *PROCEDURAL BACKGROUND*

Plaintiffs' initial complaint alleged libel, false light, malicious harassment, intentional infliction of emotional distress, interference with contract, and copyright infringement.[4] In response to a motion to dismiss, Plaintiffs filed an amended complaint[5] which again alleged numerous state law claims along with two purported federal jurisdictional hooks: the Declaratory Judgment Act and, in the alternative, the Copyright Act.

Defendants moved to dismiss the amended complaint, arguing that it failed to state a claim arising under the Copyright Act for two reasons: (1) Plaintiffs failed to

---

[4]In addition to the facts recounted relating to the songs in question, Plaintiffs' complaint contained numerous other allegations of wrongdoing by Defendants not relevant to the dismissal of the two causes of action now being considered on appeal.

[5]Plaintiffs' amended complaint falls woefully short of the professional standards appropriate for the practice of law. We can think of few situations calling for a complaint containing 795 enumerated paragraphs, 68 attachments, and 506 pages including exhibits. This case certainly did not necessitate such a filing. Moreover, the quality of the amended complaint is poor. It is a rambling and often incoherent document that has greatly hindered the operations of the courts in adjudicating this dispute.

allege any acts of infringement; and (2) a claim of copyright infringement could not lie against a co-owner of a copyright or her licensees. The district court granted Defendants' motion and dismissed the copyright infringement claim. Then, because the district court construed this claim as the only federal claim in the amended complaint, it declined to exercise continuing supplemental jurisdiction over Plaintiffs' state law claims. The district court also construed Plaintiffs' declaratory judgment claim as asserting a claim governed by state law and dismissed it as well.

Thereafter, Plaintiffs timely appealed.[6]

### *ANALYSIS*

On appeal, we review *de novo* a dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). "[A] civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "We must review the complaint in the light most favorable to Plaintiffs, accept their factual allegations as true, and determine whether Plaintiffs 'undoubtedly can prove no set of facts in support of [their] claims that would entitle [them] to relief.'" *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003) (quoting *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (alterations in original). "We need not accept as true 'legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Plaintiffs argue that the district court erred in dismissing their claims for two reasons: (1) the amended complaint did state a claim for copyright infringement with respect to "Better" and (2) the amended complaint "stated a federally justiciable claim pursuant to the Declaratory Judgment Act . . . to determine whether Plaintiffs were copyright infringers, as alleged by the Defendants; and to declare that Defendant Crooks

---

[6]In their appellate briefing Plaintiffs challenge only the dismissal of their copyright infringement and declaratory judgment claims. Any objection to the dismissal of the state law claims is thus deemed abandoned and is given no further consideration.

was not an 'author' of the musical composition 'Better', and, therefore, was an infringer." We examine each claim in turn.

*A.  Copyright Infringement Claim*

The Copyright Act gives copyright owners the exclusive rights to reproduce, prepare derivative works from, distribute, and publicly perform or display a copyrighted work. *See* 17 U.S.C. § 106. "To the ends of protecting these rights, the Act allows the legal or beneficial owner of an exclusive right under a copyright . . . to institute an action for any infringement of that particular right." *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 352 (6th Cir. 2004) (internal quotations and citations omitted).

The district court construed this case as involving two copyrights—one in each song—and concluded that the amended complaint made clear that Sevier and Crooks were co-authors of both songs, so no claim for copyright infringement could be sustained against Crooks as a co-author and the other defendants as her assignees. This was partially incorrect. As Plaintiffs argue, this case actually involves four copyrights: in the sound recording of "Better," in the musical composition of "Better," in the sound recording of "Watching Me Leave," and in the musical composition of "Watching Me Leave." *See Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 475 n.3 (6th Cir. 2003) ("Under the copyright act, sound recordings are works that result from the fixation of a series of musical, spoken, or other sounds . . . . Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights.") (internal quotation marks and citations omitted). On appeal, Plaintiffs only challenge the district court's decision regarding the musical composition copyright for "Better," so we must determine whether Plaintiffs stated a claim for infringement of that copyright.

"There are two essential questions at the heart of any copyright infringement action: whether the plaintiff owned the copyrighted work and whether the defendant copied it." *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009). The bulk of Plaintiffs' argument concerns the first of these prongs: ownership. Though there is conflicting evidence regarding whether Sevier was the sole author or a

co-author of "Better," under the liberal standard applied to reviews of complaints when considering motions to dismiss, we accept, *arguendo*, that Sevier alone authored the musical composition "Better." However, this is a hollow victory for Plaintiffs.

As we have stated repeatedly in prior cases, "[t]o succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009) (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)). *See also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (stating that a copyright infringement claim requires proof of valid copyright and proof of copying of original elements of allegedly infringed work); *Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007) ("The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant."). The amended complaint does not allege any improper copying. There is no allegation anywhere in the amended complaint that Crooks did anything with the musical composition "Better" other than utilize the sound recording that she and Sevier created and that she was admittedly permitted to use for commercial or non-commercial gain. Indeed, Plaintiffs conceded in paragraph 735 of their amended complaint that "[t]he Defendants did not engage in unauthorized copying, but rather, their actions prevented Plaintiffs from copying." That ends the inquiry; no claim for copyright infringement was properly alleged.

Plaintiffs' allegation that "Crooks attempted to transfer and did transfer an interest in the composition 'Better', [sic] which she did not own, to the Rich Defendants" is not the same thing as creating an improper copy of "Better." We read nothing in the plain language of the Copyright Act, 17 U.S.C. § 106, to suggest that such a transfer constitutes copyright infringement. We expressly decline Plaintiffs' invitation to grossly expand copyright infringement causes of action to include any acts that create barriers to a copyright holder's ability to fully exploit that copyright. Copyright protection "has never accorded the copyright owner complete control over all possible uses of his work,"

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984), and copyright infringement is simply the wrong cause of action for Plaintiffs' allegations.

*B. Declaratory Judgment Request*

The Declaratory Judgment Act states that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201. "[T]he central purpose of the Declaratory Judgment Act . . . is to provide the opportunity to clarify rights and legal relationships without waiting for an adversary to file suit." *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir. 1988).  The statute is an "enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant" to have a case heard in federal court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  We review a district court's refusal to exercise jurisdiction over a declaratory judgment action for abuse of discretion.  *Id*. at 289-90.  An abuse of discretion occurs if we are left with the "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached . . . where the trial court improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576-77 (6th Cir. 2002) (internal quotation marks and citation omitted).

In their amended complaint, Plaintiffs sought a declaratory judgment "identifying the authors of the sound recordings and underlying compositions for the musical works entitled 'Better' and 'Watching Me Leave'" as well as a declaration that Crooks was not an author of "Better."  These requests were quite plainly made in response to the numerous cease-and-desist letters that Plaintiffs received from Defendants.  Those letters accused Plaintiffs of, *inter alia*, distributing "bootleg," or unauthorized, recordings of Crooks's music.  The district court did not explicitly address the allegations of this claim, instead observing that "[f]ederal jurisdiction is inappropriate in a copyright dispute where the primary purpose of the complaint is to secure an interpretation of conflicting assignments and the alleged infringement is prospective under a declaratory

relief count or incidental to a claim of ownership." Then, without explaining how this correct statement of the law applied to these allegations, the district court summarily concluded that the declaratory judgment claim does not state a federal claim. Though we recognize that this is a complex issue, we cannot agree. Reading the allegations in the light most favorable to Plaintiffs, we cannot say that the claim's primary purpose is to resolve conflicting contract rights, as opposed to its stated purpose, i.e., to obtain declarations of authorship.

To determine whether the district court erred in determining that no federal jurisdiction existed to provide for adjudication of this claim, we must be clear about the operation of the Declaratory Judgment Act. The Eleventh Circuit clearly explained its operation as follows:

> [I]n the context of a declaratory judgment action, "the normal position of the parties is reversed; therefore, we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question." *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992). "Instead, this court must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.* Our inquiry is thus "whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant." *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987), *abrogated on other grounds by King v. St. Vincent's Hosp.*, 502 U.S. 215, 217 (1991); *see also* 22A Am. Jur. 2d Declaratory Judgments §202 (2003). Federal question jurisdiction "exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law." *Household Bank*, 320 F.3d at 1251 (emphasis added).

*Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008). The questions for us, then, are (1) whether Defendants could have sued Plaintiffs for copyright infringement under the theory that Sevier was not an author or owner of "Better" or "Watching Me Leave" and (2) whether such an action would have arisen under federal law.

The first question is easy; the answer is surely that Defendants could have sued Plaintiffs for copyright infringement. They threatened[7] to do so on numerous occasions. The question of whether Defendants' possible lawsuit would have arisen under federal law is more difficult because "[i]t is settled beyond peradventure that an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 2 (1st Cir. 1987). "The question of whether the suit 'arises under' the copyright law is considerably more sophisticated." *Id*.

Relying on *Peay v. Morton*, 571 F. Supp. 108, 112-13 (M.D. Tenn. 1983), the district court concluded that this cause of action raised a question of state law and did not arise under federal law. This legal precept has support, as the First Circuit explained:

> Not all claims of co-ownership will arise under the Copyright Act . . . . For example, at times, whether there is co-ownership may be determined by the terms of a contract governed by state law or through other ownership interests governed by state law and thus not require application of the Copyright Act. *See*, *e.g.*, *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 4-5 (1st Cir. 1987) (rejecting federal question jurisdiction where claim of co-ownership, "in its very nature and essence, [was] one for breach of contract" under state law).

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 81 (1st Cir. 2007). However, a question of authorship, rather than ownership, does arise under the Copyright Act:

> In other cases, such as where co-ownership results from purported statutory co-authorship, the question of co-ownership is governed by the Copyright Act. *See* 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.01[A][1][b] (2007) (endorsing the view that in an action seeking declaratory judgment of plaintiff as co-author and for an accounting,

---

[7]Defendants' argument on appeal that Plaintiffs lost their opportunity to seek a declaratory judgment in response to Defendants' cease-and-desist letters because "the Rich Defendants attempted to prevent Plaintiffs from selling copies of the sound recordings at issue almost an *entire year* before Plaintiffs actually filed suit" is specious. The exhibits attached to the amended complaint make clear that the conflicts between the parties were ongoing such that this delay did not negate the potential need for relief.

> federal jurisdiction is exclusive because "copyright ownership by reason of one's status as co-author arises directly from the terms of the Copyright Act itself"); *see also Gaiman v. McFarlane*, 360 F.3d 644, 652-53 (7th Cir. 2004) (collecting cases).

*Id*. Indeed, the Fifth Circuit has remarked that "*exclusive* federal district court jurisdiction exists in an action for a declaratory judgment to establish joint authorship of a copyrighted work." *Goodman v. Lee (Goodman I)*, 815 F.2d 1030, 1032 (5th Cir. 1987) (emphasis added). And *Goodman I* is not an outlier: "All of the federal circuit courts of appeal that have addressed the issue . . . agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act." *Cambridge Literary Props.*, 510 F.3d at 86. Though we have not previously confronted this issue directly, we now join our sister circuits and adopt the "prevailing view that disputed claims about whether there is co-authorship require[s] application of the Copyright Act[,]" *id*. at 87-88, which is a dispute properly adjudicated in federal court.

On its face, Plaintiffs' declaratory judgment claim undeniably seeks a declaration of authorship of sound recordings and musical compositions for two songs. The claim is allegedly brought in reasonable apprehension of litigation, based on numerous communications from Defendants. Indeed, Defendants' numerous cease-and-desist letters, attached to the amended complaint, certainly suggest a dispute over authorship—namely, whether Sevier or Crooks or both authored the songs in question. They charge Sevier with conduct violative of the Copyright Act without acknowledging his asserted authorship of the songs. "[A] determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act." *Cambridge Literary Props.*, 510 F.3d at 86; *see*, *e.g.*, *Gaiman*, 360 F.3d at 652-53 (holding that a question of ownership based on authorship of comic book characters arose under the Copyright Act).

Defendants now claim that the declaratory judgment action cannot be pursued in federal court because they have never disputed Plaintiffs' allegation that Sevier and Crooks are co-authors of the subject works. We are not persuaded. Every time

Defendants sent Plaintiffs a cease-and-desist letter alleging copyright infringement, the underlying rationale was that Plaintiffs lacked ownership of any copyright interest in "Better" and "Watching Me Leave." Indeed, their April 26, 2007 cease-and-desist letter explicitly accused Plaintiffs of copyright infringement for the sale of "bootleg" recordings that were unauthorized by the copyright owners. If, however, Sevier was an author or co-author of the songs, then he was an owner or co-owner, 17 U.S.C. § 201(a), and no claim of infringement could lie against him or his assignee, Severe Records. *See Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996). Hence, the letters clearly appear to have been premised on an implied denial of Sevier's authorship or co-authorship.

Admittedly, the cease-and-desist letters assert rights other than copyright interests, but it was the accusations of copyright infringement that provoked the declaratory judgment claim. Neither Defendants nor the district court have identified any supposed contractual dispute that is really at the heart of the declaratory judgment claim. Where Defendants persisted in accusing Sevier of copyright infringement despite his assertions of authorship, they can hardly be heard to complain, "But we didn't really mean it," when they are haled into federal court on a claim for declaration of non-infringement. Consequently, viewing the allegations in the light most favorable to Plaintiffs, we conclude that Defendants' cease-and-desist letters were premised on an authorship dispute; no other explanation seems plausible from the face of the amended complaint. Such an authorship dispute arises under federal law. It follows that the amended complaint's declaratory judgment claim arises under the Copyright Act and presents a dispute properly justiciable in federal court. We therefore reverse the district court's dismissal of this claim as an abuse of discretion.

### *CONCLUSION*

For the foregoing reasons, we affirm the district court's dismissal of Plaintiffs' copyright infringement claim. We reverse the district court's dismissal of Plaintiffs' declaratory judgment claim and remand to the district court for proceedings consistent with this opinion.