# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2021

Lyle W. Cayce
Clerk

No. 20-20523

DI ANGELO PUBLICATIONS, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

JENTRY KELLEY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-115

Before HIGGINBOTHAM, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

This appeal brings a variation on the often-thorny question of whether a claim involving a copyright arises under federal law. If Di Angelo Publications' claim to a copyright requires a construction of copyright law, there is exclusive federal jurisdiction; but if its claim calls only upon contract law, jurisdiction lies with the Texas courts. The district court determined that only contract law applied and dismissed Di Angelo's claim for want of federal jurisdiction. Finding federal jurisdiction, we reverse and remand.

No. 20-20523

## I.

The dispute centers on a book titled "Hooker to Looker; a makeup guide for the not so easily offended" (the "Book"). Jentry Kelley, a makeup artist with her own cosmetics business, first approached Di Angelo's principal, Sequoia Schmidt, with the idea of publishing the Book to promote Kelley's business. In June 2015, the parties signed a publishing contract (the "Contract") in which Di Angelo agreed to publish and distribute Kelley's then-unwritten Book, with Kelly receiving 50 percent of the net royalties. Kelley provided Di Angelo with an initial, three-page manuscript, detailing her background in cosmetics and outlining the Book's topics. According to Di Angelo, it then wrote the Book for Kelley while "communicating and/or collaborating with Kelley" during the drafting process. This process allegedly included Di Angelo's creation, selection, and arrangement of the images appearing in the Book. Nonetheless, the Book Di Angelo distributed lists only Jentry Kelley as the holder of the copyright.

Di Angelo published the Book and sold the initial 1,000-copy print run. Kelley then asked Di Angelo to prepare an updated or revised version of the Book for sale. Di Angelo alleges that it had prepared the updated work for print when it discovered that Kelley was attempting to work directly with Di Angelo's printer, in violation of the Contract, to reduce the costs she would incur selling the revised edition.

Shortly after unsuccessful overtures to the printer, in November 2018, Kelley filed a complaint in Harris County, Texas, claiming that Di Angelo intentionally misled her regarding the costs of publishing her Book and overcharged her for publishing services. Relevant here, Kelley alleged that she "is the sole owner of all copyrights, trademark rights, trade secret rights, concepts and other intellectual property . . . in the Book." She further alleged that Di Angelo "did not develop any intellectual property or other rights in

2

connection with the Book" and that Di Angelo's contrary assertions were false. At the summary judgment stage, Kelley asked the Harris County court to rescind her Contract with Di Angelo as a penalty for the alleged misrepresentations. Di Angelo counterclaimed for breach of contract, sworn account, quantum meruit, and a judgment declaring "that Kelley failed to substantially perform under the Contract." Among other things, Di Angelo alleged that "Kelley has prevented Di Angelo from selling the 2nd edition and making a profit therefrom." The Harris County action is still pending.

Di Angelo filed this case in the Southern District of Texas in January 2020. According to Kelley, the filing came on the heels of a November 2019 ruling in Harris County that granted summary judgment to Kelley on certain Di Angelo counterclaims including the declaratory judgment claim. Di Angelo's federal complaint asserts a single claim for relief, titled "Declaratory Judgment Of Authorship and Copyright Ownership of the Book and Its Update/Sequel." Specifically, Di Angelo seeks a declaration that it "owns copyrights in the [B]ook and its update and those copyrights include among other rights, the right of Di Angelo Publications to control the printing and distribution of the [B]ook [,] its update," and any derivative works.

Di Angelo alleges that it "acquired copyrights in the [B]ook" and its update by "writing, editing, planning and taking all photographs and making all illustrations, and planning, designing, and arranging the layout of the [B]ook." Elsewhere in its complaint, Di Angelo alleges that it "wrote the [B]ook, planned and illustrated the [B]ook, prepared the layout for the [B]ook," as well as "planned, took or made, and formatted all of the photographs and illustrations in the [B]ook." Apart from these allegations, much of Di Angelo's complaint describes the contract dispute Kelley initiated in state court. Di Angelo contends that an actual controversy has arisen between the parties because Kelley has asserted exclusive ownership

of all rights in the Book and its update and seeks rescission of the Contract, which if granted, would give Kelley sole control over the Book's sale and distribution absent a declaration of Di Angelo's copyrights.

Kelley moved to dismiss Di Angelo's declaratory relief claim under Rules 12(b)(1) and 12(b)(6). Kelley argued that the claim did not give rise to federal jurisdiction because it was premised solely on her alleged breach of the Contract, a controversy governed by Texas law. Kelley further argued the federal filing as an end-run around rulings against Di Angelo in the Harris County case. Kelley went on to argue that Di Angelo's claim would fail on its merits because the Contract conclusively established that Kelley alone authored the Book. Di Angelo responded that its claim was distinct from any claims or counterclaims asserted in state court because it was premised on a dispute over who wrote the Book, not on the terms of the Contract. In Di Angelo's view, resolution of this authorship dispute requires the district court to interpret federal copyright law, including the definitional and ownership provisions in 17 U.S.C. §§ 101 & 201, which the state court lacks jurisdiction to address.

The district court agreed with Kelley on the jurisdictional question and granted the motion to dismiss.[1] Although the district court acknowledged that certain ownership claims require interpretation of the Copyright Act,[2] it determined that here "the disputed ownership and authorship of the Book hinges on the terms of the Contract."[3] The district court explained that while the "Contract does not explicitly provide for ownership of copyrights," it

---

[1] *Di Angelo Publ'ns, Inc. v. Kelley*, No. CV H-20-115, 2020 WL 5884659, at *3 (S.D. Tex. Aug. 28, 2020).

[2] *Id.* at *2 (citing *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987)).

[3] *Id.* at *2.

"refers to Kelley as the author of the Book."[4] The district court further noted that Di Angelo's complaint was heavy on contract-related allegations including that "Kelley acted 'contrary to the terms of the contract'" and that "the Contract . . . provides Kelley a buyout option of Di Angelo's rights."[5] As Di Angelo's claim sounded in contract, the dispute did not require construction of the Copyright Act and, thus, did not arise under federal law.[6] The district court declined to reach Kelley's arguments that Di Angelo failed to state a claim under Rule 12(b)(6) or that the court should abstain from hearing the dispute while the Harris County case was pending.[7] Di Angelo appealed.

## II.

We review a district court's decision to dismiss under Rule 12(b)(1) de novo.[8] Di Angelo, as the party asserting federal jurisdiction, has the burden of "alleg[ing] a plausible set of facts establishing jurisdiction."[9] Where, as here, "the district court rules on jurisdiction without resolving factual disputes . . . we consider the allegations in the plaintiff's complaint as true and review whether the district court's application of the law is correct."[10] Generally, we affirm a dismissal under 12(b)(1) only if "'it

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at n.10.

[8] *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).

[9] *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021).

[10] *Id.* at 271-72 (internal quotations omitted).

No. 20-20523

appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.'"[11]

The parties agree that there is federal jurisdiction over Di Angelo's declaratory judgment claim only if it raises an issue arising under copyright law.[12] A claim arises under copyright law in three circumstances: "'[1] if the complaint is for a remedy expressly granted by the Act . . . or [2] asserts a claim requiring constructi[on] of the Act, . . . or, [3] at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.'"[13] Only the second of these—construction of the Copyright Act—is implicated here.[14]

---

[11] *See Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020) (quoting *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014)).

[12] Additionally, the Declaratory Judgment Act requires an actual controversy before a plaintiff like Di Angelo can seek declaratory relief. *See* 28 U.S.C. § 2201(a). In the intellectual property context, this requires a showing that "the declaratory plaintiff has a real and reasonable apprehension of litigation and . . . the declaratory plaintiff has engaged in a course of conduct that brings it into adversarial conflict with the declaratory defendant." *Tex. v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989). Kelley does not dispute that an actual controversy exists between the parties, and the district court seems to have assumed that one existed. Regardless, Di Angelo is likely correct that the requisite controversy exists: Kelley alleged in Harris County that she "is the sole owner of all copyrights . . . in the Book," and Di Angelo has alleged that it "is preparing to publish the material that is subject to [Kelley's] copyright." *W. Pub. Co.*, 882 F.2d at 176.

[13] *Goodman*, 815 F.2d at 1031 (quoting *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 826 (2d Cir. 1964)).

[14] *See Di Angelo Publ'ns*, 2020 WL 5884659, at *2 ("Di Angelo does not assert its claim involves copyright infringement or statutory royalties or that this is a case where a distinctive policy of the Act requires that federal principles control. [] Therefore, the Court turns to whether Di Angelo's complaint asserts a claim that requires construction of the Copyright Act.") (internal quotations omitted).

No. 20-20523

Di Angelo argues that resolving the dispute over who owns the copyrights in the Book and its update requires reference to federal copyright law. Claims of ownership in a copyright do not invariably arise under copyright law. It is well established that where a party holds a copyright by virtue of an assignment or similar contractual arrangement, state law is determinative of ownership.[15] But claims of copyright ownership grounded in authorship touch on federal concerns. Section 201(a) of the Copyright Act provides that "[c]opyright in a work protected under this title vests initially in the author or authors of the work."[16] "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display," and thus registration is not a prerequisite to an author holding a copyright.[17]

As early as 1987, we held in *Goodman v. Lee* "that *exclusive* federal district court jurisdiction exists in an action for a declaratory judgment to establish joint authorship of a copyrighted work" because such a claim "clearly involves the application and interpretation of the copyright ownership provisions."[18] Since *Goodman*, our sister courts of appeals have

---

[15] *See T.B. Harms*, 339 F.2d at 828 ("[T]he federal grant of a patent or copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law.").

[16] 17 U.S.C. § 201.

[17] *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) ("[N]either § 1331, which confers subject-matter jurisdiction over questions of federal law, nor § 1338(a), which is specific to copyright claims, conditions its jurisdictional grant on whether copyright holders have registered their works before suing for infringement.").

[18] *Goodman*, 815 F.2d at 1031-32 (emphasis added). Contrary to Kelley's suggestion, the Copyright Act's lack of a definition of authorship does not defeat the conclusion that authorship claims require construction of the Act. As our sister court noted, such a position is "without merit" because it rests on "the mistaken impression that

reached a consensus: competing authorship claims require "the application of the Copyright Act" and thus state a federal claim.[19] Indeed, this appears to be the unanimous view among the courts of appeal that have squarely addressed the question.[20] Courts have reached this conclusion in a variety of circumstances, including cases involving claims for declaratory judgment[21] and cases where at least some portion of the parties' business relationship was covered by an adjacent contract.[22] Importantly, neither the presence of a related contract nor contract claims is dispositive of whether a valid copyright claim has been pled. As the Second Circuit explained, the *T.B. Harms* test— the basis for each aforementioned decision—"obviated the need for courts

---

courts 'construe' only those terms already defined in a statute." *Merchant v. Levy*, 92 F.3d 51, 55-56 (2d Cir. 1996).

[19] *See, e.g.*, *Severe Recs., LLC v. Rich*, 658 F.3d 571, 582 (6th Cir. 2011) ("[W]e now join our sister circuits and adopt the "prevailing view that disputed claims about whether there is co-authorship require[s] application of the Copyright Act[,]" which is a dispute properly adjudicated in federal court.") (internal citation omitted); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 86 (1st Cir. 2007) ("All of the federal circuit courts of appeal that have addressed the issue, including this one, agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act.") (collecting cases); *Gaiman v. McFarlane*, 360 F.3d 644, 652–53 (7th Cir. 2004); *Merchant*, 92 F.3d at 55 (citing 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 12.01[A] at 12–13 (1994)) ("better view" that "in an action for a declaratory judgment to establish the plaintiff as the defendant's co-author and for an accounting based thereon, . . . federal jurisdiction is exclusively [sic]"); *Sullivan v. Naturalis, Inc.*, 5 F.3d 1410, 1414 (11th Cir. 1993).

[20] *Severe Recs., LLC*, 658 F.3d at 582 (quoting *Cambridge Literary Props.,* 510 F.3d at 86) ("All of the federal circuit courts of appeal that have addressed the issue . . . agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act.").

[21] *See, e.g.*, *Severe Recs., LLC*, 658 F.3d at 582; *Merchant*, 92 F.3d at 55.

[22] *See, e.g.*, *Sullivan*, 5 F.3d at 1414 (reversing district court's determination that plaintiffs' claim arose only under contract law).

to determine at the outset of litigation whether copyright claims were incidental to contract claims."[23] Instead, what counts under *T.B. Harms* is "what is alleged on the face of the complaint."[24]

Although Di Angelo muddles its complaint with contract allegations aplenty, it also alleges that it "acquired copyrights in the [B]ook" by "writing, editing, planning and taking all photographs and making all illustrations, and planning, designing, and arranging the layout of the [B]ook." Di Angelo alleges that it made these same contributions both to the original Book and its update. Although the complaint uses neither the term "joint work" nor "co-author," it is nigh impossible to read Di Angelo's allegations that it "wrote the [B]ook . . . and illustrated the [B]ook" while "communicating and/or collaborating with Kelley" without concluding that Di Angelo is alleging, at minimum, co-authorship of the Book.[25] Consequently, Di Angelo's complaint appears to state a cognizable copyright claim.

Kelley contends that this is merely an appearance and that the question of authorship sounds in contract, not federal law. It bears repeating that the Contract never expressly vests a copyright or any intellectual

---

[23] *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000).

[24] *Id.*

[25] In fact, Di Angelo seems to be pursuing the even bolder argument that it alone was the author, so it alone owns the copyrights in the Book. This despite Di Angelo's own allegations, acknowledging that Kelley made some contributions to the Book. Evidence also indicates that the copyright for the Book is formally registered to Kelley. These issues pertain more to the merits than to the limited jurisdictional question on appeal, but it bears noting that even a copyright registered to Kelley would not preclude Di Angelo from claiming to be a co-author: "A copyright registration, standing alone, does not serve as repudiation of joint authorship because coauthors are not expected to investigate the copyright register for competing registrations." 18 Am. Jur. 2d *Copyright and Literary Property* § 69.

property right in either party. But, as Kelley points out, the Contract addresses her as the "author." From this, she concludes that the Contract plainly does not contemplate the ghostwriting arrangement alleged by Di Angelo. Indeed, the district court listed the Contract's references to Kelley as the "author" among its reasons for concluding that Di Angelo had pled only a contractual claim.[26] At this stage, we are not persuaded that the term "author" carries the determinative significance Kelley assigns it.

Put simply, neither the Contract's use of "author" nor its more general terms preclude Di Angelo from adducing facts that would make it a statutory author for purposes of 17 U.S.C. § 201(a). The Contract does not define author, and the word's common meaning can apply to multiple parties who collaboratively engage in producing one creative work, a possibility expressly contemplated by copyright law.[27] And contrary to Kelley's suggestion, the terms of the Contract lend some support to the notion that the Book would be produced collaboratively.

In addition to traditional editing, proofing, and distribution services, the Contract specifies that Kelley paid Di Angelo for services described as "manuscript development" and "elaboration on [the] base manuscript." The Book is no tome, but at 124 pages, it grew considerably from the three-page manuscript Kelley originally submitted. On this limited record, it is plausible to infer that the manuscript's transformation into a book of sorts is attributable, at least partially, to the "development" and "elaboration" services expressly provided for in the Contract. In this sense, the Contract

---

[26] *Di Angelo Publ'ns*, 2020 WL 5884659, at *2.

[27] *See* 17 U.S.C. § 101 (defining "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole").

No. 20-20523

itself permits the inference that the parties' envisioned Di Angelo making substantive contributions to the work.

But the Contract may not even be the final word on the matter. We note that the document lacks a merger or integration clause, thus allowing for the possibility that the parties' agreement extended beyond the terms which they reduced to writing.[28] Accordingly, the Contract alone is not dispositive of the jurisdictional question.

In a similar vein, the rights Di Angelo seeks to vindicate through a declaratory judgment invite further comment. Di Angelo seeks a declaration of its copyright so that it may control the "use," "printing and distribution of the [B]ook and its update." Although these are rights the holder of a copyright would enjoy,[29] they also seem to be rights that Di Angelo enjoys under the Contract, the terms of which dictate that Kelley shall not "proceed with business ventures that directly or indirectly affect the business services Di Angelo Publications is providing." If Di Angelo could vindicate the same rights without reference to copyright law, then one might question whether the claim truly arises under copyright law or whether the federal proceeding ought to be stayed in favor of the earlier-filed state lawsuit. But viewing the allegations in the light most favorable to Di Angelo, we conclude that at least some of the rights referenced in Di Angelo's complaint are not co-extensive with its rights under the Contract. Specifically, rights in the Book's update are not expressly addressed by the Contract's terms.

---

[28] *See, e.g.*, *Digby v. Texas Bank*, 943 S.W.2d 914, 929 (Tex. App. El Paso 1997, writ denied) (holding that when parties neglect to include a merger clause, Texas courts are not precluded from considering extrinsic evidence).

[29] See 17 U.S.C. § 106.

Although that document contains a passing reference to a second print run of the original Book, none of the agreement's terms deal with the possibility of an update or revision to the Book, such as the one Di Angelo allegedly prepared before the parties' breakdown in relations. Thus, a declaration of Di Angelo's copyright in the updated work could permit it to exercise rights with respect to that work that it would not enjoy under the Contract. For instance, a declaration could allow Di Angelo to profit from the Book's update, which according to its state court complaint, Kelley currently prevents it from doing.

### III.

The district court confined its dismissal order to the jurisdictional question, and the parties generally limited their briefing and oral arguments to this issue, so we limit our holding accordingly. At the same time as we hold that Di Angelo's claim necessarily implicates 17 U.S.C. § 201, it bears mentioning that subsection (a)'s definition of "Initial ownership" is not the only portion of that statute with apparent relevance to the facts at hand. Subsection (b), which defines "Works made for hire," may address the merits disputes to which the parties allude. We leave to the parties and the district court the applicability of this section.

We VACATE the district court's order dismissing Di Angelo's declaratory judgment claim and REMAND the case for further proceedings consistent with this opinion.