**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0413n.06

Case No. 17-2276

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 16, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION; HEMLOCK SEMICONDUCTOR, LLC, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellees, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| KYOCERA CORPORATION, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: COLE, Chief Judge; CLAY and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Kyocera Corporation is locked in a long-running bout with Hemlock Semiconductor Corporation and Hemlock Semiconductor, LLC, which supply Kyocera with polysilicon that it uses to make solar panels. Kyocera is fighting to get out of certain obligations under the parties' contracts. Below, the district court declared victory for Hemlock. But at this stage, Hemlock has earned only a partial victory. We therefore reverse in part and affirm in part.

I.

In the mid-2000s, the market for solar panels was taking off. Kyocera needed a steady supply of quality polysilicon. So it entered into four contracts with Hemlock, in which Kyocera

promised to purchase specified amounts of polysilicon from Hemlock at specified prices over the course of the next ten years or so.

Those contracts contain so-called "take-or-pay" provisions. Under these provisions, the contracts require Kyocera to "take" a specified quantity of polysilicon from Hemlock each year. But if Kyocera does not want to take the polysilicon in a given year, Kyocera still has to "pay" full price for it. This means that Kyocera is on the hook for a certain quantity of polysilicon annually, whether it takes the polysilicon or not.

The contracts also contain so-called "acceleration" provisions. If Kyocera defaults under the contracts, these provisions accelerate the amount it owes Hemlock, such that Hemlock can demand *all* remaining sums owed. For these acceleration provisions to take effect, Kyocera must default, Hemlock must serve notice of default, and Hemlock must give Kyocera 180 days to cure its default. But if Kyocera does not cure, Hemlock can elect to terminate, at which point Kyocera becomes liable for all remaining payments due—effectively, the sum of the take-or-pay provisions.

Several years into Kyocera and Hemlock's deal, the Chinese government disrupted the solar-panel market by subsidizing Chinese solar-panel companies. This intervention reduced the market price of polysilicon such that the price Kyocera agreed to pay Hemlock was far greater than the going rate. And so Kyocera sought to renegotiate. Initially, the parties came to a compromise, temporarily lowering the price of polysilicon under the parties' deal. But eventually, Hemlock signaled that it would begin insisting that Kyocera take or pay for polysilicon at the original (and now inflated) price.

This litigation ensued. Hemlock sought a declaratory judgment that Kyocera had repudiated the parties' contracts by indicating that it would not take or pay at the original price. In response, Kyocera counterclaimed, seeking a declaratory judgment that the "pay" portion of the

take-or-pay provisions is an unlawful penalty, and thus that the acceleration provisions are too. Kyocera also counterclaimed for breach of contract, alleging that three of the parties' contracts obligated Hemlock to expand certain production facilities, which Hemlock had not done. Hemlock moved to dismiss Kyocera's counterclaims, and the district court agreed. Kyocera now appeals.

II.

Kyocera first appeals the dismissal of its challenge to the take-or-pay provisions. We review the district court's decision de novo. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). In doing so, we accept Kyocera's well-pled allegations as true and ask whether Hemlock is nevertheless "clearly entitled to judgment." *Id.* (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). We view the facts as alleged in the light most favorable to Kyocera and draw all reasonable inferences in its favor. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Our task is to determine whether Kyocera raises a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). And Kyocera's claim is plausible if, assuming the truth of Kyocera's allegations, a reasonable factfinder could rule in its favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing Kyocera's claim, we apply Michigan law—the law of the forum state and that designated in the parties' contracts. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999). As it happens, Michigan's courts provide little guidance here. The thrust of Kyocera's claim is that the take-or-pay provisions are unlawful penalties in disguise. But there is no case in which a Michigan court has considered such a claim. The closest we have is a Michigan Court of Appeals decision resolving an earlier chapter of the parties' dispute in which Kyocera attempted to invoke a force majeure clause in the contracts. In dicta, the court referenced the take-or-pay provisions, but only to note their existence

and operation as a means of refuting Kyocera's force-majeure argument. *Kyocera Corp. v. Hemlock Semiconductor, LLC*, 886 N.W.2d 445, 447–48, 453 (Mich. Ct. App. 2015). Hemlock makes much of this discussion, reading it to suggest that Michigan *always* enforces take-or-pay provisions and would do so here. But because Kyocera did not challenge the validity of the take-or-pay provisions in those proceedings,[1] we cannot read the Michigan court's discussion as setting out a general rule that it will always enforce take-or-pay provisions or even that it would do so in this case. And neither of the other cases Hemlock identifies goes so far. *See McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 570 F.2d 594, 605 (6th Cir. 1978); *Attorney Gen. v. Pub. Serv. Comm'n No. 1*, 431 N.W.2d 47, 49 (Mich. Ct. App. 1988).

With no Michigan authority on point, we must look elsewhere to attempt to discern what path the Michigan Supreme Court might take. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (explaining that "when evaluating an undecided question of [state] law, a federal court sitting in diversity must make the [sic] 'the best prediction, even in the absence of direct state precedent, of what the [state] Supreme Court would do if confronted with [the] question,'" including considering "jurisprudence from other jurisdictions" (last alteration in original) (first quoting *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000); then quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999))). Under the approach followed in other jurisdictions, the key question is whether the take-or-pay provisions offer Kyocera two viable performance options, on the one hand, or one performance option coupled with a liquidated damages provision, on the other. *See, e.g., Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 821 F. Supp. 432, 434–35 (S.D. Miss. 1993) (collecting cases); *Minnick*

---

[1] Hemlock makes no argument that Kyocera is precluded from raising this challenge here, despite not doing so previously.

*v. Clearwire U.S. LLC*, 275 P.3d 1127, 1130–31 (Wash. 2012) (en banc); *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998); 11-59 *Corbin on Contracts* § 59.10 (2017); 14 *Williston on Contracts* § 42:10 (4th ed.). If the former, the take-or-pay provisions are enforceable as written. If the latter, the question becomes whether the "pay" option quantifies lawful liquidated damages or an unlawful penalty. If the payment obligation is a penalty, it is unenforceable—regardless of what the parties' contract labels it. And at least on this point, Michigan law certainly agrees. Mich. Comp. Laws § 440.2718(1); *Moore v. St. Clair Cty.*, 328 N.W.2d 47, 50 (Mich. Ct. App. 1982) ("[U]se of the terms 'liquidated' or 'stipulated' damages does not necessarily mean that the clause is valid and not a penalty."). So if the provisions here are penalties, it is doubtful that Michigan courts would let them fly by night under the guise of take-or-pay provisions.

*Alternative Performance v. Liquidated Damages*. First, we ask whether the take-or-pay provisions offer Kyocera two viable performance options, or one option coupled with liquidated damages. To make this call, courts consider whether, at the time of contracting, it appears that the parties intended that the "pay" option present a relatively equivalent (and thus desirable) mode of performance—and not, as Kyocera claims, a measure to coerce compliance with the "take" option. *See Superfos*, 821 F. Supp. at 434; *Minnick*, 275 P.3d at 1131; *Am. Soil Processing*, 586 N.W.2d at 333–34. And at the outset, common sense points to coercion: Why would Kyocera opt to pay for polysilicon and get nothing in return? *See Iqbal*, 556 U.S. at 679 (instructing courts to gauge plausibility by "draw[ing] on [their] judicial experience and common sense").

Hemlock offers three suggestions. First, Hemlock reasons that Kyocera must have seen the pay option as a viable alternative, because Kyocera is a big, smart corporation and would never have agreed to the deal otherwise. But the fact that a sophisticated entity has agreed to pay a sum

does not necessarily mean that the law will always enforce its promise, *see, e.g.*, *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir. 1985), and Hemlock points to no Michigan authority holding otherwise. Kyocera's sophistication at the bargaining table may later become relevant, but in this posture, it does not doom Kyocera's claim as a matter of law. So Hemlock's first argument swings and misses. Second, Hemlock hypothesizes that Kyocera might have thought that in certain circumstances it would be willing to pay for polysilicon one year (but not take it) as a way to keep the contract alive in the event it still wanted polysilicon in the future. But if Kyocera wanted to keep the contract alive, it could simply purchase polysilicon *and take delivery*. It would not need to pay and get nothing in return. So here again, Hemlock swings and misses.

Hemlock saves its best swing for last. Moving and storing polysilicon is not free. And so Hemlock theorizes that, if the price of polysilicon tanks (as it did here), it might make sense for Kyocera to pay for polysilicon without taking it in order to avoid transportation and storage costs. If the math is right, and the parties intended for the "pay" provision to account for this possibility, Hemlock may have a point. But nothing in the pleadings suggests that this math influenced the parties' negotiations. In fact, Kyocera alleges that there were no such negotiations. Nor do the pleadings suggest that the price of polysilicon has fallen so much that transportation and storage costs would justify paying for polysilicon without taking it. At this stage, we consider only Kyocera's allegations, viewed in a light most favorable to Kyocera, construing all reasonable inferences in Kyocera's favor. *See Gavin*, 835 F.3d at 640. Accepting Hemlock's transportation-and-storage argument at this juncture would disregard those precepts. So we are left with the common-sense conclusion that paying a lot of money for nothing in return is not a real performance

option under a contract. To be sure, if discovery bears out Hemlock's point, Kyocera's claim may later fail. But for now, Hemlock goes down swinging.

Moreover, two additional allegations further support the conclusion that paying something for nothing is not a valid performance option. Both have to do with the kind of provisions that normally appear in lawful take-or-pay contracts. First, the take-or-pay provisions do not contain "make-up rights" that would credit any money advanced under the "pay" option to Kyocera's purchase of polysilicon in future years. Make-up-rights are common in enforceable take-or-pay arrangements. *Superfos*, 821 F. Supp. at 436 (collecting cases). Although the absence of make-up rights may not be dispositive, *see World Fuel Servs., Inc. v. John E. Retzner Oil Co., Inc.*, 234 F. Supp. 3d 1234, 1241 (S.D. Fla. 2017), their absence nevertheless pushes Kyocera's claim further into the realm of plausibility, *see, e.g.*, *Superfos*, 821 F. Supp. at 438–39. Second, while lawful take-or-pay arrangements often involve the *seller* (here, Hemlock) bearing construction costs and associated risks at the outset of a contract, *see, e.g.*, *Diamond Shamrock Expl. Co. v. Hodel*, 853 F.2d 1159, 1167 (5th Cir. 1988), the contracts at issue required *Kyocera* to front Hemlock money for construction and expansion. So Kyocera—not Hemlock—bore these costs and risks from the start. True, the contracts do require Hemlock to repay this money to Kyocera over time, as a credit against purchases of polysilicon—meaning that eventually, Hemlock internalizes these costs. But it is far from clear that the parties envisioned that the pay option would compensate Hemlock for these costs this late in the duration of the contracts, when construction and expansion are long over and Hemlock has been providing Kyocera with polysilicon for over a decade. Thus, these allegations further belie any conceivable purpose for the pay option other than to liquidate damages.

*Liquidated Damages v. Penalty.* The fact that the pay option might not be a valid mode of performance is not the end of the inquiry. If the pay option is a lawful measure of liquidated damages, then it is nevertheless enforceable. *E.g.*, *Superfos*, 821 F. Supp. at 440. But if not, it is a penalty, and Hemlock can seek only its actual damages. *E.g.*, *id.* at 440–41 & n.8.

Under Michigan law, damages can be liquidated, "but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." Mich. Comp. Laws § 440.2718(1). Otherwise, the clause is "void as a penalty." *Id.* Demanding full price for nothing in return seems unreasonable for one of two reasons. First, if Hemlock has already produced Kyocera's polysilicon, requiring Kyocera to pay the full contract price fails to account for Hemlock's ability to resell the polysilicon elsewhere. Or, if Hemlock can avoid producing the polysilicon at all—as Kyocera alleges happened here—requiring Kyocera to pay full price fails to account for any costs Hemlock would save. Here again, common-sense points to a problem: Under the pay option, Hemlock can get all the money promised under the contract but do nothing, thereby making a *greater* profit than if the parties performed as envisioned.[2] *See Iqbal*, 556 U.S. at 679.

Our court's decision in *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017), does not solve this problem. There, in a dispute between Hemlock and another buyer, our court affirmed a ruling for Hemlock *on summary judgment* that the *acceleration provisions* in those parties' contracts were not penalties. *Id.* at 696–

---

[2] Hemlock points out that a seller has the option to sue for damages under Michigan law even without reselling its goods. *See id.* § 440.2703. But in that circumstance, Michigan law only affords "the difference between the market price at the time and place for tender and the unpaid contract price . . . but less expenses saved in consequence of the buyer's breach." *Id.* § 440.2708(1). Thus, Michigan law would not permit recovery of the full contract price.

97, 705–08. Those two pieces of context—the procedural posture and the contractual provisions at issue—are crucial to understanding why *Solarworld* is of no help to Hemlock here.

First, *Solarworld* involved a dispute over acceleration provisions. *Id.* at 696–97, 705–06. Those provisions, just like those in Kyocera and Hemlock's contracts, required the buyer to satisfy the remainder of the contract in the event of default, i.e., the sum of the remaining take-or-pay provisions. *Id.* But unlike in this case, the buyer in *Solarworld conceded* the validity of the take-or-pay provisions. *See id.* at 707. So when the buyer tried to argue that the acceleration provisions failed to account for Hemlock's cost savings (as Kyocera does here), the court rejected the argument. "Although such cost savings might factor into an ordinary breach-of-contract claim," the court observed, the acceleration provisions were merely the sum of the unchallenged take-or-pay provisions. *Id.* Thus, in *Solarworld*, the buyer's cost-savings argument fell flat, but only because the buyer chose not to challenge the take-or-pay provisions. Had the buyer elected to do so, that challenge would have been important, just as in the "ordinary" case. *See id.*

Second, *Solarworld* reviewed a summary-judgment ruling in favor of Hemlock. *Id.* at 697, 706. And the summary-judgment record contained facts that we do not have here. As an initial matter, expert testimony reflected that the buyer had saved (and Hemlock had lost) a large amount of money early in the contract due to Hemlock pricing the polysilicon well below market. *Id.* at 707. So the acceleration provisions were something of a fair deal, given that Hemlock was only making up for what it had lost before. *Id.* In addition, a forty-one-page expert report established that calculating Hemlock's lost profits would have been difficult at the time of contracting. *Id.* at 707–08. And finally, the *Solarworld* court was able to conclude the acceleration provisions were meant to account for Hemlock's construction costs. *Id.* at 708. Here, by contrast, the district court dismissed Kyocera's claim at the pleading stage—without the benefit of expert testimony or other

record information that might justify the amount owing under the pay provisions. So in this posture, we cannot say that requiring Kyocera to pay full price for nothing is a reasonable measure of damages. This is particularly so in light of Kyocera's allegations that Hemlock could have adjusted the amount due under the "pay" option to account for cost savings at the time of contracting, but did not. Down the road, the record may develop in this case such that Kyocera's claim falters like the buyer's in *Solarworld*. But for now, Kyocera's claim passes muster, and the district court erred by dismissing it on the pleadings.[3]

III.

Next, Kyocera appeals the district court's decision to dismiss its declaratory-judgment challenge to the acceleration provisions as unripe. We review that decision de novo. *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014). As the district court observed, Hemlock did not seek to invoke the acceleration provisions at the inception of this case, nor have events come to pass that would permit Hemlock to do so. Specifically, for Hemlock to invoke the acceleration provisions, several events would need to occur: Kyocera would need to default, Hemlock would need to serve notice of default, 180 days would have to pass in which Kyocera could cure, and at the close of that period, Hemlock would need to elect to terminate the contract. As of right now, none of those events has occurred. So can Kyocera get a ruling on the validity of the acceleration provisions?

---

[3] The dissenting opinion raises an interesting argument that Kyocera's failure to plead that specific performance is available means that its claim must fail. Since Hemlock did not raise this argument before the district court or on appeal, Hemlock forfeited it. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006). Nor does this argument go to our subject-matter jurisdiction over Kyocera's challenge to the take-or-pay provisions. *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *accord Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 570 (6th Cir. 2013) ("A bad theory (whether of liability or of damages) does not undermine federal jurisdiction." (quoting *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005))); *cf. Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (noting the Supreme Court's effort to "bring some discipline" to courts' assignment of the "jurisdictional label," and explaining that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity").

No.  To get a declaratory judgment, Kyocera must present a justiciable case or controversy under Article III.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).  Specifically, Kyocera must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Kyocera's challenge fails that test.

The chain of contingencies necessary to trigger the contracts' acceleration provisions shows that the controversy here is hardly "immedia[te]," *id.*, and that Kyocera's prospective liability under the acceleration provisions is not "*certainly impending,*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990)); *see MedImmune*, 549 U.S. at 128 n.8 (explaining that the "justiciability problem" here "can be described in terms of standing," which requires an injury-in-fact).  Thus, Kyocera's situation is not like *MedImmune*, where the Court held that there was a justiciable controversy because all that remained was for a party to refuse to pay royalties.  549 U.S. at 128.  In the same vein, damages under the acceleration provisions are not the equivalent of *MedImmune*'s royalties.  Those damages are not due and may never be.  Kyocera is not faced with paying them or facing suit— *MedImmune*'s "dilemma."  *Id.* at 129.  And the circumstances here are not such that, reversing roles, Hemlock is in a position in which it could sue for damages under the acceleration provisions. *Cf. Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1245 (10th Cir. 2008) (Gorsuch, J.) (confirming jurisdiction to hear declaratory judgment action based on "counterfactual[]" possibility that defendant could bring "straightforward infringement suit").  That Hemlock has referenced its rights under the acceleration provisions and invoked them against different buyers in different circumstances does not negate the contingencies here.  So Kyocera's claim is unripe.

Shifting focus, Kyocera suggests that it has complied with the take-or-pay provisions under protest only because the acceleration provisions coerced it into doing so. But that argument only shows why a challenge to the acceleration provisions is unripe. The only immediate injury that Kyocera faces here is having to pay under the take-or-pay provisions—not having to pay damages under the acceleration provisions. That injury is traceable to the take-or-pay provisions, not the acceleration provisions. *See Clapper*, 568 U.S. at 409 (injury-in-fact must be "traceable to the challenged action" (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010))). And an order striking down the acceleration provisions would not redress Kyocera's obligation to pay under the take-or-pay provisions, so long as those provisions remain in effect. *Id.* (injury-in-fact must be "redressable by a favorable ruling" (quoting *Monsanto*, 561 U.S. at 149)). This means that Kyocera's challenge to the take-or-pay provisions must be the first domino to fall. *See supra* Part II; *cf. Solarworld*, 867 F.3d at 707. So long as those provisions are in force, Kyocera must comply with them. In other words, it is the money owing under the take-or-pay provisions—not damages under the acceleration provisions—that are the equivalent of *MedImmune*'s royalties. Kyocera's challenge to the acceleration provisions more closely resembles a "declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution." *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998). Considering the validity of the acceleration provisions in "piecemeal" fashion would not "finally and conclusively resolve" the parties' dispute, so long as the take-or-pay provisions remain. *MedImmune*, 549 U.S. at 127 n.7 (emphasis omitted). Thus, the district court correctly deemed Kyocera's challenge to the acceleration provisions unripe.

IV.

The final issue Kyocera raises on appeal is the district court's dismissal of its breach-of-contract counterclaim. Kyocera does so conditionally, asking that we reach this issue only if we validate the take-or-pay or acceleration provisions "because they compensated Hemlock for costs it had to incur to expand its manufacturing facilities." Appellant Br. 50. Since we have made no such ruling, Kyocera's condition fails, and we need not reach this issue.

In any event, the district court was correct. Kyocera claims that the contracts obligate Hemlock to expand its facilities. In support of this claim, Kyocera seizes on a sentence fragment in the contracts that states, "[Kyocera] acknowledges that [Hemlock] will be expanding its manufacturing facilities." *E.g.*, R. 89-2, Pg. ID 4163. Emphasizing the "will be" part of that fragment, Kyocera contends that this line is a contractually enforceable promise. But read in proper context, this language creates no contractual obligation. In full, the sentence states that "[Kyocera] acknowledges that [Hemlock] will be expanding its manufacturing facilities (the "Expanded Manufacturing Facility") *in order to produce the Products to be supplied under this Agreement*." *Id.* (emphasis added). And the rest of the corresponding paragraph limits Hemlock's liability in the event that its manufacturing expansion causes delay in getting Kyocera polysilicon. So the purpose of this paragraph is to ward off a potential skirmish resulting from delayed production—not to obligate Hemlock to build facilities. And that makes sense. The parties' contracts are for polysilicon, not buildings. Granted, Kyocera made "non-refundable, unconditional, irrevocable advance payment[s]" so that Hemlock could build facilities to produce polysilicon. *Id.*, Pg. ID 4162. But the fact that those payments are *unconditional* only confirms that the parties did not intend for them to support any enforceable right. Not only that, but those payments are credited back to Kyocera toward its purchase of polysilicon, meaning the payments

buy polysilicon, not buildings. And so the only reasonable interpretation of the parties' agreement

is that it obligated Hemlock to do one thing: provide Kyocera with polysilicon. The district court

therefore correctly dismissed Kyocera's breach-of-contract counterclaim.

\* \* \*

We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings

consistent with this opinion.

**CLAY, Circuit Judge, dissenting.** I am not persuaded that Plaintiff has stated a declaratory judgment claim for breach of contract. Plaintiff assumes, without explanation, that Defendant would be entitled to specific performance for breach of the take-or-pay provision. Under Michigan law, however, the default remedy for a breach-of-contract claim is damages—not specific performance. Absent a plausible allegation that specific performance is available, the parties' "take-or-pay" provision is best interpreted as a "take-or-pay-or-breach" provision. Because the majority assumes that specific performance is available despite the lack of any allegation to that effect, I respectfully dissent.

As an initial matter, the majority declines to consider the specific performance issue because Defendant has not raised it. But Defendant had no reason to raise this issue because Defendant benefits from Plaintiff's poorly pleaded declaratory judgment action. Plaintiff is continuing to buy polysilicon at the contract price pursuant to its "take" obligation out of fear that a court could order it to specifically perform its "pay" obligation—and to do so under the contract's acceleration clause. (*See* R.127 at PageID #5450 ("Litigation was then stayed through the 2016 calendar year to allow [Plaintiff] to perform on the 2015 contracts.")). This fear, of course, is unfounded unless specific performance is available, but Defendant would not benefit from saying so; as long as Plaintiff fears the possibility of being ordered to pay the contract price for nothing, it will not breach the contract and, significantly for Defendant, Plaintiff might even agree to pay more than the potential damage award in order to settle the claim. The majority's assertion that Defendant has "forfeited" the specific performance issue is therefore misplaced. Where, as here, a defendant stands to gain more from a plaintiff's misunderstanding of its rights than from correcting the plaintiff's error, the Court cannot rely on the adversarial process alone and may intervene on behalf of justice, *see Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999) ("[T]he

court may choose to entertain arguments not raised by the parties when the failure to do so would constitute a miscarriage of justice."); *Greenlaw v. United States*, 554 U.S. 237, 264 (2008) (Alito, J., dissenting) ("[T]he interest of the public and the Judiciary in correcting grossly prejudicial errors of law may sometimes outweigh other interests normally furthered by fidelity to our adversarial tradition.").

Furthermore, the Court *must* address the specific performance issue in this case because, in the declaratory judgment context, Plaintiff's failure to state a breach-of-contract claim creates a jurisdictional defect. As we have previously explained:

> Our [jurisdictional] inquiry is . . . whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant. Federal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.

*Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011) (quoting *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008)) (internal citations and quotation marks omitted); *see also Sherwin-Williams Co. v. Ins. Co. of Pennsylvania*, 105 F.3d 258, 261 (6th Cir. 1997) (analyzing declaratory judgment action that was "premised on diversity jurisdiction"). The "pay" provision is the coercive element of the parties' contract that purportedly gives this Court jurisdiction to consider Plaintiff's argument that the "pay" provision is punitive. However, as further discussed in this opinion, the "pay" provision has no coercive force—rendering the majority's analysis of the issue a nullity—because Plaintiff does not allege that the "pay" provision is enforceable via specific performance. The majority's refusal to consider the specific performance issue based on Defendant's "forfeiture"[1] is therefore legally erroneous; "[s]ubject-

---

[1] In Footnote 3, the majority opinion also argues that there is no jurisdictional defect because pleading problems do not "go to" to the issue of subject matter jurisdiction. But pleading problems commonly require dismissal

matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."

*Ashcroft v. Iqbal*, 556 U.S. 662, 671, (2009); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The majority's decision is also erroneous on a practical level because it will further delay

Plaintiff's efficient breach. *See Tri Cty. Wholesale Distributors, Inc. v. Labatt USA Operating

Co., LLC*, 828 F.3d 421, 429 (6th Cir. 2016) (explaining that "contracting parties . . . have an

inherent right to breach a contract that is no longer advantageous, committing what economists

call an efficient breach").

Specific performance is an exception to the usual remedy of damages for a breach-of-

contract claim involving the sale of goods. M.C.L. § 440.2716(1); *see also Richardson v. Lamb*,

235 N.W. 817, 818 (Mich. 1931) ("The general rule is that specific performance is not decreed

where the subject-matter of the contract is personal property."); *Groeb Farms, Inc. v. Alfred L.

Wolff, Inc.*, No. 08-CV-14624, 2009 WL 500816, at *7 (E.D. Mich. Feb. 27, 2009) ("Specific

performance is an equitable remedy that may be awarded where the legal remedy of damages is

impracticable."). Under the UCC, which presumably applies to the parties' contract for the sale

of polysilicon, courts may order specific performance "where the goods are unique or in other

---

for lack of subject matter jurisdiction. *See Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack. A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The majority relies on several cases, none of which addresses the complexities of jurisdiction in the context of a declaratory judgment action, to suggest that the specific performance issue in this case merely relates to the merits of Plaintiff's legal theory rather than to jurisdiction. But the problem with Plaintiff's complaint is that there will never be a controversy over whether the "pay" provision is a penalty as long as Plaintiff may simply breach the contract and pay damages. As this Court has previously explained, "[i]n order to satisfy the 'case or controversy' requirement [of Article III jurisdiction], 'a party seeking declaratory relief must allege facts to support a likelihood' that it will incur [the alleged liability]." *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004). The majority's argument is therefore inapposite; where, as here, the deficiency of a declaratory judgment complaint renders the parties' dispute purely hypothetical, the failure to state a claim is also a jurisdictional defect that the Court may address *sua sponte*.

proper circumstances." § 440.2716(1). The commentary to M.C.L. § 440.2716(1) elaborates on the meaning of these terms as follows:

> The test of uniqueness under this section must be made in terms of the total situation which characterizes the contract. Output and requirements contracts involving a particular or peculiarly available source or market present today the typical commercial specific performance situation, as contrasted with contracts for the sale of heirlooms or priceless works of art which were usually involved in the older cases. However, uniqueness is not the sole basis of the remedy under this section for the relief may also be granted "in other proper circumstances" and inability to cover is strong evidence of "other proper circumstances".

§ 440.2716 cmt. 2. Thus, "uniqueness" may refer to either (1) the uniqueness of a product's source or (2) the uniqueness of the product itself, and "other proper circumstances" may refer to circumstances where, at the very least, (1) a breaching seller is the only available source or (2) a breaching buyer is the only available customer. *See id.*

In the original context of take-or-pay agreements, specific performance of the buyer's "pay" obligation was an appropriate remedy for a breach-of-contract claim. Take-or-pay provisions had their genesis in the unusual circumstances of the natural gas industry, wherein pipeline–producer agreements are typically exclusive requirements contracts; the pipeline is often the producer's only customer, and the producer typically agrees to sell as much natural gas as the pipeline is willing to buy. *See Colorado Interstate Gas Co. v. Chemco, Inc.*, 854 P.2d 1232, 1234–35 (Colo. 1993). Furthermore, as the Supreme Court of Colorado explained:

> Long term contracts . . . are prevalent in the natural gas industry. Purchasers, such as pipelines and industrial consumers, make substantial investments in equipment for the transportation and consumption of natural gas. Long term supply contracts ensure supply security for these purchasers during a time of shortage, such as the shortage that occurred during the 1970's . . . .

> Early gas contracts had no minimum take requirement, permitting the pipeline to choose the amount taken from each producer. Generally these contracts also contained an exclusive dedication clause, prohibiting a producer from seeking another purchaser for any available gas. Thus, pipelines were able to "shut-in" wells when the demand for gas dropped, effectively utilizing the gas wells as storage

- 18 -

> reservoirs for the benefit of the pipelines. Because the demand for natural gas is the highest in the winter, many wells were shut-in during the summer, and producers received no revenue from them. Being thus deprived of revenues, the producer "was often unable to recover the substantial exploration, drilling, and operational costs associated with wells."
>
> However, the regulation of natural gas sales in interstate markets placed artificial ceilings on the price paid to producers of gas . . . . These ceilings limited the negotiability of price in gas sales agreements. Thus, because supply was limited, producers sought, and obtained, other economic benefits in their supply contracts. Among the favorable provisions negotiated by producers in this artificial market is the take-or-pay clause which, as an incentive for the producer's contract, became a part of the price pipelines were willing to pay to insure continued supply.

*Id.* (citations omitted). As this history demonstrates, take-or-pay agreements between pipelines and producers will generally qualify for specific performance because a producer generally has only a single customer (the pipeline) and cannot cover in the event that the pipeline does not purchase gas for an extended period of time. *See id.*; § 440.2716 cmt. 2.

In this case, by contrast, Plaintiff does not allege that the contract involves unique goods, a unique source of goods, or "other proper circumstances." *See* § 440.2716. Plaintiff merely assumes that specific performance is available, perhaps because the contract borrows the phrase "take or pay" from the natural gas context. But the parties' mere use of the phrase "take or pay" does not render their contract enforceable via specific performance. *See id.*

Moreover, the circumstances of this case are not analogous to those of the natural gas economy. Whereas a pipeline is typically a natural gas producer's exclusive buyer, Plaintiff is one of Defendant's many customers; Defendant admits that it sells polysilicon to numerous "producers of solar panels, including [Plaintiff.]" (Def. Br. at 2.) And whereas a natural gas producer is typically a pipeline's exclusive source of natural gas, Defendant is one of Plaintiff's many suppliers; Plaintiff explains that it "entered into supply contracts with solar polysilicon suppliers other than [Defendant] between 2004 and 2007, including Wacker AG of Germany, Tokuyama of

Japan, Mitsubishi of Japan, and SGS/REC of Norway and the United States." (R.144 at PageID #5963.) Thus, unlike a natural gas producer, which has no ability to cover in the event that a pipeline does not purchase natural gas, Defendant may cover in the event of Plaintiff's breach by selling polysilicon to another buyer. *See Colorado Interstate Gas Co.*, 854 P.2d at 1234–35. The parties' agreement appears to be a run-of-the-mill contract for the sale of goods—a far cry from the exclusive requirements contracts seen in the natural gas economy. As such, Defendant is not entitled to specific performance in the event of Plaintiff's breach—at least not for the reasons applicable to pipeline–producer contracts. *See* § 440.2716; *Colorado Interstate Gas Co.*, 854 P.2d at 1234–35.

Plaintiff's failure to address specific performance is fatal to its declaratory judgment claim. Plaintiff seeks a declaratory judgment that a court could not order Plaintiff to perform its "pay" obligation. *See Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011). But Plaintiff's complaint is not so specific. Rather, Plaintiff's complaint merely asks the district court for a declaration that the "pay" obligation is "unenforceable." (Pl. Br. 13.) The term "unenforceable" is ambiguous; on one hand, the "pay" obligation is probably "unenforceable" via specific performance, but on the other hand, the "pay" obligation is probably enforceable insofar as Defendant may seek damages if Plaintiff fails to either "take" or "pay." Defendant responds to this ambiguity with an ambiguity of its own: Defendant asserts that the contract is "fully valid and enforceable under Michigan law," (Def. Br. 20), because Plaintiff's "pay" option is one of two "bargained-for performance obligations." (Def. Br. 22.) By asserting that the contract is "enforceable," Defendant answers Plaintiff's complaint without addressing the specific performance issue that motivated Plaintiff to file suit.

If Plaintiff had properly pleaded its complaint by alleging that the "pay" obligation is enforceable *via specific performance*, then Defendant's statement that the "pay" obligation is "enforceable" would be a plainly inadequate answer. Even if a court will "enforce" Plaintiff's obligation to either "take or pay," the question remains whether a court could order Plaintiff to "pay" if Plaintiff refuses to "take." Michigan courts have not specifically addressed the remedy for breach of an alternative performance contract, but "the measure of damages for the breach of such a contract is generally considered to be the value of the alternative least onerous to the defendant"—not specific performance. 25 Williston on Contracts § 66:106 (4th ed.). Some jurisdictions make an exception to this rule when "one of the alternatives is to pay a certain sum of money," *id.*, but this exception reflects an analytical lapse; the proper term for a payment option that is (1) included in a contract as an alternative to performing a contractual duty, and (2) subject to specific performance, is a liquidated damages clause. Specific performance is therefore a defining feature of a liquidated damages clause and is a necessary element of any claim calling for a liquidated-damages analysis. Because Plaintiff asked the district court to apply a liquidated damages analysis without alleging that the "pay" obligation is enforceable via specific performance, the district court properly dismissed Plaintiff's claim.

Because the majority finds Plaintiff's deficient complaint to be adequate, I respectfully dissent.