# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 25, 2021

Lyle W. Cayce
Clerk

No. 20-10995

Abdulaziz Ghedi,

*Plaintiff—Appellant*,

*versus*

Alejandro Mayorkas, *Secretary, U.S. Department of Homeland Security*; David Pekoske, *in his official capacity as Administrator of the Transportation Security Administration*; Troy Miller, *Acting Commissioner, U.S. Customs and Border Protection*; Merrick Garland, *U.S. Attorney General*; Christopher Wray, *in his official capacity as Director of the Federal Bureau of Investigation*; Charles Kable, IV, *in his official capacity as Director of the Terrorist Screening Center*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1919

Before Stewart, Costa, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

No. 20-10995

Abdulaziz Ghedi is an international businessman who regularly jets across the globe. Frequent travelers, however, are not always trusted travelers. In recent years, Ghedi has had repeated run-ins with one of America's most beloved institutions: modern airport security. Ghedi complains that ever since he refused to be an informant for the Federal Bureau of Investigation a decade ago, he has been placed on a watchlist, leading to "extreme burdens and hardship while traveling." Unsurprisingly, the Government refuses to confirm or deny anything. Ghedi says these intrusive security annoyances have harmed him both professionally and reputationally. The law, however, is not on his side. Modern air travel is chock-full of irritations and indignities that leave many passengers not just bothered but humiliated. But Ghedi has not pleaded plausible claims, nor sued the right people. While Ghedi's hassles are certainly atypical, they do not dispense with our jurisdictional limits or with ordinary pleading standards. We thus AFFIRM the district court's dismissal of Ghedi's complaint.

I

A

Understanding Ghedi's claims starts with understanding 21st century airport security, a byzantine structure featuring an alphabet soup of federal agencies. One such agency is DHS—the Department of Homeland Security. According to its website, one of its "top priorities is to resolutely protect Americans from terrorism and other homeland security threats."[1] That includes "secur[ing] the nation's air . . . borders to prevent illegal activity while facilitating lawful travel and trade."[2] DHS leaves the day-to-day of

---

[1] *Mission*, DHS (July 3, 2019), https://www.dhs.gov/mission.

[2] *Id.*

No. 20-10995

airport security to specialized federal agencies, including the TSA (Transportation Security Administration), which generally screens passengers,[3] and CBP (Customs and Border Protection), which specifically screens international passengers.[4]

Still, it would be easier for DHS, TSA, and CBP to guard our airports if they knew who to look out for in the first place. To that end, the FBI administers a special anti-terrorism program called the TSC, or Terrorist Screening Center. According to the FBI's website, the TSC is "a multi-agency center" that that manages "the watchlist."[5] What is the watchlist? The FBI describes it as a "database" containing the "identities of those who are known or reasonably suspected of being involved in terrorist activities."[6] The TSC then provides those identities to "front-line screening agencies," like TSA, to aid in "positively identifying known or suspected terrorists who are attempting to . . . enter the country, [or] board an aircraft . . . ."[7]

The Government admits, though, that within the watchlist are at least two sub-lists—the No Fly List and the Selectee List. Inclusion on either comes with consequences. The No Fly List is exactly what it sounds like: a

---

[3] 49 U.S.C. § 114(e)(1).

[4] 6 U.S.C. § 211(c).

[5] *Terrorist Screening Center*, FBI, https://www.fbi.gov/about/leadership-and-structure/national-security-branch/tsc; *see also* 49 U.S.C. § 114(h) (providing statutory authority for the watchlist).

[6] *Terrorist Screening Center*, *supra* note 5; 49 C.F.R. § 1560.105(b) (implementing the watchlist).

[7] *Terrorist Screening Center*, *supra* note 5; 49 U.S.C. § 114(h) (providing for sharing the watchlist with front-line agencies).

No. 20-10995

list of individuals that the TSA prohibits from flying.[8] In contrast, someone on the Selectee List may still fly. The TSA, however, will subject the individual to "enhanced screening" before boarding.[9] According to the Government, enhanced screening differs from standard screening in two ways. First, it takes more time for the passenger. The TSA will search the passenger's person multiple times and in multiple ways instead of using a single search. Second, the screening itself is more intrusive. TSA will search the passenger's property for trace amounts of explosives, physically search luggage, power electronics on and off, and examine the passenger's footwear.

Still, merely undergoing enhanced screening does not mean that the TSC has placed a passenger on the Selectee List. According to the Government, any passenger with an "SSSS" printed on his boarding pass must undergo enhanced screening. And those passengers might have an SSSS printed on their boarding passes due to inclusion on the Selectee List, "random selection," or "reasons unrelated to any status." Passengers not on the Selectee List can even end up with an SSSS designation on multiple, consecutive flights. The Government neither confirms nor denies who is included on either list since that would reveal information of "considerable value" to terrorists.

Passengers that undergo enhanced screening for unexplained reasons do have at least one remedy, though. Congress has required the Secretary of Homeland Security to provide passengers "delayed or prohibited from boarding a commercial aircraft" by TSA a "timely and fair process" to

---

[8] 49 C.F.R. § 1560.105(b)(1); *Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017).

[9] § 1560.105(b)(2); *Beydoun*, 871 F.3d at 462–63; *Abdi v. Wray*, 942 F.3d 1019, 1023 (10th Cir. 2019).

No. 20-10995

challenge why.[10] Congress directly required the TSA to do that too.[11] The response is the Traveler Redress Inquiry Program, or DHS TRIP. Anyone "who believe[s] they have been improperly or unfairly delayed or prohibited from boarding an aircraft" because of the Selectee List may seek redress.[12] The "TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review [the aggrieved passenger's] documentation and information[,] . . . correct any erroneous information, and provide the individual with a timely written response."[13]

B

Ghedi is president of an American company that operates globally. He is also first-generation American. And like many naturalized American citizens, Ghedi, born in Somalia, has not forgotten his roots. His company is a major importer of chickens, eggs, and meat into Somalia. Ghedi personally invests in Somalia's hotel industry. And Ghedi commits significant amounts of his time, talent, and treasure towards helping everyday Somalis. For instance, Ghedi founded the Qalam Scholarship Fund, which pays for Somalis to attend universities in Kenya, Uganda, and Egypt. He also founded the Somali Resource Center, which provides critical services to Somali refugees.[14]

---

[10] 49 U.S.C. § 44926(a).

[11] § 44903(j)(2)(C)(iii)(I).

[12] 49 C.F.R. § 1560.201.

[13] § 1560.205(d).

[14] As we discuss more fully below, Ghedi is appealing the district court's dismissal of his complaint. Therefore, we accept his version of the facts, including the details about his travel, as true. *See Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021)

No. 20-10995

Ghedi's extensive professional and personal connections with Somalia require him to fly internationally on a regular basis. They seem to have caught the FBI's attention as well. According to Ghedi, an FBI special agent approached him in 2012. The special agent asked Ghedi to serve as an informant. Ghedi declined, but offered to inform "the relevant authorities . . . of any wrongdoing of which he [became] aware, without the need to be on the FBI's payroll."

Ghedi claims that he "began experiencing extreme burdens and hardship while traveling" shortly after declining the FBI's request. For example, since 2012 he has experienced:

- an inability to print a boarding pass at home, requiring him to interact with ticketing agents "for an average of at least one hour, when government officials often appear and question" him;

- an SSSS designation on his boarding passes;

- TSA searches of his belongings, "with the searches usually lasting at least an hour";

- TSA pat downs when departing the U.S. and CBP pat downs when returning to the U.S.;

- encounters with federal officers when boarding and deboarding planes;

---

("Where, as here, 'the district court rules on jurisdiction without resolving factual disputes . . . we consider the allegations in the plaintiff's complaint as true . . . .'" (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271–72 (5th Cir. 2021) (internal quotation omitted))); *Johnson v. BOKF Nat'l Ass'n*, ___ F.4th ___, ___ (5th Cir. 2021) (explaining that in reviewing the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) we "accept[] all well-pleaded facts as true, view[ing] them in the light most favorable to the plaintiff, and draw[ing] all reasonable inferences in the plaintiff's favor").

- questioning and searches by CBP officers "for an average of two to three hours" after returning from international travel;

- CBP confiscation of his laptop and cellphone "for up to three weeks";

- being taken off an airplane two times after boarding; and

- being detained for seven hours by DHS and CBP officials in Buffalo, New York in May 2012 and being detained in Dubai for two hours in March 2019.

Ghedi also claims that those traveling with him, including his children, are subject to additional searches and pat downs and receive the SSSS designation on their boarding passes. Ghedi states that due to these difficulties, he has "often miss[ed] his scheduled flights."

These travel difficulties, according to Ghedi, occur because he is on the Selectee List. And Ghedi claims that his placement on the Selectee List "is due, in part, to him declining the FBI's request to serve as an informant."

Ghedi states that he initiated DHS TRIP inquiries on two occasions—first in 2012 and then again in 2019. As to his 2012 inquiry, Ghedi says only that this "inquiry did not resolve his travel issues or remove him" from the Selectee List. As to his 2019 inquiry, Ghedi says he received a "standard response letter" stating that DHS could neither confirm nor deny whether Ghedi was on any watchlist. The letter also said that DHS had corrected its records where "necessary, including, as appropriate, notations that may assist in avoiding [future] incidents of misidentification."

Ghedi filed a lawsuit against various federal officers in their official capacities—the Acting Secretary of DHS, the Administrator of TSA, the Commissioner of CBP, the Attorney General, and the Directors of the FBI and Terrorist Screening Center. He brought five different claims: (1) Fourth Amendment violations by DHS, TSA, and CBP due to the pat-down

searches and prolonged detentions; (2) Fourth Amendment violations by DHS, TSA, and CBP for searches of his cellphones; (3) Fifth Amendment due process violations by all Defendants for the lack of adequate procedures to challenge placement on the Selectee List; (4) Administrative Procedure Act violations by all Defendants for the lack of adequate process to challenge his placement on the Selectee List and the searches and seizures of his person and effects; and (5) APA violations by the Attorney General, the FBI, and the TSC for placing Ghedi on the Selectee List in retaliation for his refusal to become an FBI informant. Ghedi sought declaratory relief concerning the alleged Fourth and Fifth Amendment violations as well as the APA violations. He also sought injunctive relief that would "order DHS TRIP to revise its policies" and reexamine his previous inquiry. Ghedi further asked the district court to enjoin Defendants from conducting searches of his person or property without probable cause.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, and 12(b)(6) for failure to state a claim. The district court granted their motion in a short order. The order first dismissed several of Ghedi's claims for lack of subject-matter jurisdiction under 49 U.S.C. § 46110, which provides appellate courts with exclusive jurisdiction over challenges to TSA orders.[15] According to the district court, § 46110 prohibited its consideration of Ghedi's challenges to the inadequate DHS TRIP procedures, violations of his Fourth Amendment rights, and placement on the watchlist. The district court then concluded that Ghedi could not bring claims based on facts outside of a six-year statute of limitations. The district court also found that "Plaintiff has failed to

---

[15] 49 U.S.C. § 46110.

sufficiently allege a present injury or imminent threat of future injury" and thus lacked standing to bring any of his claims.

The district court alternatively found that Ghedi failed to state a claim for all five counts in the complaint. First, the court dismissed the procedural due process claim because: "(1) Plaintiff has failed to plead a deprivation of the right to travel; (2) Plaintiff has failed to plead a protected interest in his reputation and a 'plus' factor; and (3) the redress process is constitutionally adequate." Next, the district court dismissed the Fourth Amendment claims because Ghedi failed to state a claim that any of the searches or seizures were unreasonable. Finally, the district court dismissed the two APA claims. The first APA claim, according to the district court, "is coextensive with [the] procedural due process and Fourth Amendment claims." And the second, concerning the alleged retaliation, is "based on mere speculation and devoid of any facts supporting an inference that Plaintiff was placed on the [Selectee List] 'at least in part' from declining" to serve as an FBI informant.

Ghedi timely appealed.

## II

We review de novo the district court's dismissal for failure to state a claim under Rule 12(b)(6).[16] The plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] A claim is facially plausible when its factual matter allows us to draw a "reasonable inference that the defendant is liable for the

---

[16] *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021) (citation omitted).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

No. 20-10995

misconduct alleged."[18] A merely "speculative" inference is not enough, and we ignore the complaint's legal conclusions in determining facial plausibility.[19] At end, determining facial plausibility is a "context-specific task" that requires us to draw on our "judicial experience and common sense."[20]

Likewise, we review de novo the district court's dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). The party seeking to invoke subject-matter jurisdiction has the burden to establish it.[21] "Dismissal for lack of subject-matter jurisdiction . . . is proper only when the claim is so . . . 'completely devoid of merit as not to involve a federal controversy.'"[22] A claim fails that test when the plaintiff does not "plausibly allege all jurisdictional allegations."[23] In other words, the same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1).[24]

---

[18] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[19] *Twombly*, 550 U.S. at 555.

[20] *Ashcroft*, 556 U.S. at 679.

[21] *Boudreaux*, 3 F.4th at 753 (citation omitted).

[22] *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)).

[23] *Id.* at 749.

[24] *See id.* (holding that plausibility applies equally to reviewing both the merits and jurisdictional allegations in a complaint); *see also Davis v. United States*, 597 F.3d 646, (5th Cir. 2009) (per curiam) ("A Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" (quoting *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009))).

III

We turn first to Ghedi's constitutional claims, that Defendants violated the Fourth and Fifth Amendments. For the reasons explained below, we cannot reach the merits of his Fourth Amendment claims. Similarly, his Fifth Amendment claims fail on plausibility grounds.

A

Ghedi brings two Fourth Amendment claims. The first alleges that the heads of the DHS, TSA, and CBP violated his Fourth Amendment rights through "prolonged detentions," and "numerous invasive, warrantless pat-down searches" lacking probable cause. The second alleges that the heads of the DHS, TSA, and CBP also violated his Fourth Amendment rights through their agents conducting "warrantless searches of his cell phones without probable cause." The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures."[25] Outside the border context, a warrantless search of a cellphone—whether supported by probable cause or not—is generally unreasonable.[26] The district court dismissed these claims.

As a reminder, Ghedi had the burden to plausibly allege a federal controversy. If he did not, then the district court lacked subject-matter jurisdiction to decide his claims. This limitation comes from Article III's requirement that federal courts decide only "Cases" and "Controversies."[27] A Case or Controversy exists only when the plaintiff has "standing to sue."[28]

---

[25] U.S. CONST. amend. IV.

[26] *Riley v. California*, 573 U.S. 373, 386 (2014).

[27] U.S. CONST. art. III, § 2.

[28] *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (per curiam).

No. 20-10995

And standing to sue exists only when the plaintiff plausibly alleges three elements—(1) an "injury in fact," (2) that is "fairly . . . trace[able] to the challenged action of the defendant," and (3) that is "likely . . . redress[able] by a favorable decision."[29] We disagree with the district court that Ghedi failed to allege a plausible injury in fact. But we affirm because Ghedi has failed to plausibly allege that his injury is fairly traceable to these Defendants.

## (1)

Not just any injury will suffice to establish standing. Ghedi is requesting prospective relief, declaratory and injunctive, which means that he must "show that 'there is a real and immediate threat of repeated injury.'"[30] "Merely having suffered an injury in the past is not enough."[31] Defendants say that Ghedi's claim to standing fails here since he has not alleged any concrete travel plans. We disagree.

Defendants cite the Supreme Court's decision in *Lujan v. Defenders of Wildlife*.[32] In that case, conservationists sued to stop foreign, federally backed construction projects in a bid to protect endangered wildlife.[33] The conservationists alleged they had traveled to the construction site areas before to observe wildlife; that they intended to go back at some point; but that they had "no current plans" to travel.[34] Those facts did not establish an imminent future injury, said the Court. The previous travel "prove[d]

---

[29] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

[30] *Deutsch*, 882 F.3d at 173 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

[31] *Id.*

[32] 504 U.S. 555 (1992).

[33] *Lujan*, 504 U.S. at 563.

[34] *Id.* at 563–64.

12

nothing," and mere "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be"—could not support an imminent future injury.[35]

Comparing *Lujan* to this case, though, is an apples-to-oranges comparison. The *Lujan* conservationists neither alleged a professional need for habitual travel nor that they were injured each time they flew. Instead, they alleged that they traveled for pleasure (to view wildlife) and that their injury would occur only once they arrived at their destination (the wildlife's habitat). Ghedi, on the other hand, alleges both a professional need for habitual travel and that his injuries are tied to the *act of flying*, not his destination. He serves as president of a company operating internationally, owns international investments, and leads international charitable endeavors. He also alleges that he "frequently endures severe difficulties" whenever he flies, and that these difficulties have persisted the "last eight years." On these facts we can reasonably infer that his next flight, and thus injury, is both real and immediate. Therefore, he has plausibly alleged an injury in fact under Article III.[36]

---

[35] *Id.* at 564.

[36] The Defendants also cite to our *en banc* decision in *Frame v. City of Arlington* for the proposition that Ghedi's has failed to allege sufficiently concrete future travel plans. 657 F.3d 215, 235 (5th Cir. 2011) (*en banc*). But our decision in *Frame* only bolsters our analysis. We certainly recognized *Lujan* for the proposition that "[m]ere 'some day' intentions . . . 'without any description of concrete plans[]' do[] not support standing." 657 F.3d at 235 (quoting *Lujan*, 504 U.S. at 564). But we also explained that "'imminence' is an 'elastic concept'" that turns on a "sufficiently high degree of likelihood" of future injury. *Id.* It is not so rigid that a plaintiff must "engage in futile gestures" to maintain standing. *Id.* at 236. Requiring Ghedi to amend his complaint with each new plane ticket would be a futile gesture, indeed.

No. 20-10995

(2)

Even though we hold that Ghedi has plausibly alleged an injury in fact, he still must satisfy standing's second prong—that his injury is fairly traceable to these Defendants.[37] Here Ghedi's Fourth Amendment claims falter. That is because Ghedi bases his Fourth Amendment claims on TSA and CBP agents' searching him and seizing his electronics. He argues these searches and seizures are atypical actions, even for people on the Selectee List. Yet instead of suing these agents directly, Ghedi has brought his Fourth Amendment claims against the heads of DHS, TSA, and CBP. Ghedi does not allege that any of these officials personally conducted or directed the searches or seizures he has experienced. And his allegations that his experiences are *atypical* cut against an inference that these agents are following official policy. In sum, we cannot reasonably infer that the heads of DHS, TSA, or CBP will immediately cause or ever have caused the kind of Fourth Amendment violation Ghedi alleges. At most Ghedi's allegations give rise to a reasonable inference that "the independent action[s] of some third party not before the court," individual TSA or CBP agents, will cause him future injury.[38] Such a connection cannot support traceability for standing.[39] Therefore, Ghedi has failed to plausibly plead that his injury in fact is fairly traceable to the Defendants he has sued.

B

We turn next to Ghedi's Fifth Amendment claims. Ghedi claims that the DHS TRIP system violates his Due Process rights because it "provides individuals like [himself] with no adequate redress avenue to contest the

---

[37] *Lujan*, 504 U.S. at 560.

[38] *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–21 (1976)).

[39] *Id.*

No. 20-10995

deprivation of their constitutionally protected liberty interests."[40] The Due Process clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[41] But it "is not a general fairness guarantee."[42] As both its text and Ghedi's invocation make plain, Ghedi must start by plausibly pleading some *deprivation*. He fails to do so.[43]

(1)

Ghedi first alleges that Defendants have deprived him of his right to travel. His complaint alleges, in support, that he must get his boarding pass at the airport, has experienced extra searches after returning from international flights, has missed some flights, and has been removed twice from an airplane after boarding. But Ghedi never alleges that he was prevented from ultimately getting to his final destination. At most, these allegations lead to a reasonable inference that the Government has

---

[40] We note that Ghedi has plausibly pleaded standing to bring his claims under the Fifth Amendment. Unlike his claims under the Fourth Amendment, which largely challenge atypical intrusions attributable to the decisions of individual TSA agents, Ghedi's Fifth Amendment claims are directed an agency policy—the DHS TRIP system. That ameliorates the traceability problem that we identified with Ghedi's Fourth Amendment claims. And because we could order these Defendants to make changes to the DHS TRIP system if it violates Due Process, *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (outlining the test for evaluating whether agency procedures meet procedural due process minimums), that makes Ghedi's Fifth Amendment claims "likely . . . redress[able] by a favorable decision." *Lujan*, 504 U.S. at 561.

[41] U.S. Const. amend. V.

[42] *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019).

[43] Because Ghedi has failed to plausibly plead a deprivation, we do not reach the separate constitutional question: Whether the DHS TRIP procedures are constitutionally adequate. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) (answering constitutional questions "is legitimate only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy between individuals" (quoting *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892))).

inconvenienced Ghedi. But they do not plausibly allege a deprivation of Ghedi's right to travel.

In short, Ghedi has no right to hassle-free travel. In the Supreme Court's view, international travel is a "*freedom*" subject to "reasonable governmental regulation."[44] And when it comes to reasonable governmental regulation, our sister circuits have held that Government-caused inconveniences during international travel do not deprive a traveler's right to travel. In the Sixth Circuit's view, "incidental or negligible" delays of "ten minutes" to "an entire day" do not "implicate the right to travel."[45] The Second and Tenth Circuits have held the same.[46] Ghedi has therefore failed to plausibly allege that he has been deprived of his right to travel internationally by the extra security measures he has experienced.

(2)

Ghedi's allegation that Defendants have deprived him of his right to freely practice his chosen profession also fails. While we have recognized that right before, Ghedi must plead facts showing that Defendants "effectively foreclosed" him from practicing his chosen profession to show a deprivation.[47] Ghedi pleads only that the extra screenings make it "nearly impossible to do" his business and humanitarian work "effectively." But these threadbare allegations do not give rise to a reasonable inference that the

---

[44] *Haig v. Agee*, 453 U.S. 280, 306 (1981).

[45] *Beydoun*, 871 F.3d at 468.

[46] *See Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 141 (2d Cir. 2010) (holding that delaying a traveler for "little over one day . . . was a minor restriction that did not result in a denial of the right to travel"); *Abdi*, 942 F.3d at 1032 (rejecting that the Government deprived a traveler's due process rights because a "forty-eight-hour delay . . . reasonably encumbered" him).

[47] *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997).

No. 20-10995

Government has effectively foreclosed Ghedi from serving as president of his company. And Ghedi points to no caselaw supporting that his liberty interest in practicing his chosen profession extends to his charitable endeavors. Here too, then, Ghedi has failed to plausibly allege a deprivation of a constitutionally protected interest.

(3)

Ghedi finally asserts that Defendants have deprived him of his liberty interest in his reputation. We have noted before that "the infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest."[48] *More* means that Ghedi must plausibly allege both "stigma" and "an infringement of some other interest."[49] Ghedi has not plausibly pleaded either.

As we noted at the outset, Ghedi's status on the Selectee List is a Government secret. Simply put, secrets are not stigmas. The very harm that a stigma inflicts comes from its public nature.[50] Ghedi pleaded no facts to support that the Government has ever published his status—one way or the other—on the Selectee List. His assertions that the Government has attached the "stigmatizing label of 'suspected terrorist'" and "harm[ed] . . . his reputation" are legal conclusions, not factual allegations. But even if that were not the case, our preceding analysis shows that Ghedi failed to plausibly plead an infringement of some other interest. Ghedi has

---

[48] *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (citing *Paul v. Davis,* 424 U.S. 693, 710–11 (1976)).

[49] *Id.*

[50] *See Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (requiring stigmatizing charges be "made public"); *see also Paul*, 424 U.S. at 701–02 (focusing on the effect of a stigma on a person's public reputation, tying it to "governmental defamation").

therefore failed to plausibly plead that Defendants have deprived him of his liberty interest in his reputation.

IV

Ghedi further asserts that the district court erred in dismissing his two claims under the APA. We disagree. Neither claim is plausible.

A

The Fourth Count in Ghedi's complaint alleges that "all" the Defendants are violating the APA by "implementing policies or practices that permit, or fail to prevent, Defendants' arbitrary and capricious decision making." An agency certainly has no power to take actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[51] But the only *policy* Ghedi directly identifies is the DHS TRIP process. And Ghedi's complaints about the DHS TRIP process boil down to one claim: that even after he used the DHS TRIP process, the "warrantless and invasive searches" continued. That may be why the district court found these allegations "coextensive with [Ghedi's] due process and Fourth Amendment claims." Because we have already held that Ghedi failed to plausibly plead standing under the Fourth Amendment or state a claim under the Fifth, he has likewise failed to plausibly plead this claim.

---

[51] 5 U.S.C. § 706(2)(A).

No. 20-10995

## B

The Fifth Count[52] in Ghedi's complaint alleges that the Attorney General, FBI Director, and TSC Director acted arbitrarily and capriciously by placing him on the Selectee List. Again, we agree that federal agencies cannot take arbitrary and capricious actions.[53] But "[t]he arbitrary and capricious standard is 'highly deferential,' and we must afford the agency's decision 'a presumption of regularity.'"[54] Ghedi's core factual allegation is that he was placed on the Selectee List for "declining to serve as an FBI informant." But he then further alleges that he was placed on the Selectee List only "in part" because of his refusing the FBI, and that the Government regularly requires at least reasonable suspicion for anyone it places on it. Even if we could reasonably infer that Ghedi is, indeed, on the Selectee List, Ghedi's own admissions make it only speculative that he was placed on it in retaliation. Therefore, Ghedi's allegations do not permit a reasonable inference that these Defendants violated typical review processes to retaliate against him.[55]

---

[52] It is the fifth count only in order. Ghedi's complaint, though, labeled it "Count Six."

[53] § 706(2)(A).

[54] *Hayward v. U.S. Dep't of Lab.*, 536 F.3d 376, 379 (5th Cir. 2008).

[55] *See Ashcroft*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting FED. R. CIV. P. 8(a)(2)).

No. 20-10995

\*      \*      \*

Controlling law yields just one conclusion: Ghedi has failed to plausibly allege standing to bring his Fourth Amendment claims, or to plausibly state his Fifth Amendment or APA claims. Therefore, we cannot grant him relief and do not reach his remaining issues.[56]

We AFFIRM the district court.

---

[56] The district court also found that Ghedi's claims were at least partially barred by statute of limitations, and that it lacked jurisdiction to address Ghedi's claims under 49 U.S.C. § 46110, which prevents district courts from reviewing certain TSA actions. Because of our disposition, we need not reach either issue.