# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 16, 2024

Lyle W. Cayce
Clerk

No. 22-30218

Manuel Adams, Jr.,

*Plaintiff—Appellee*,

*versus*

City of Harahan,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2794

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

This appeal arises from Manuel Adams's suit against the City of Harahan ("the City") for its alleged deprivation of his Fourteenth Amendment right to procedural due process. Because the City never violated Adams's liberty interest in pursuing a career in law enforcement, we REVERSE the district court's denial of the City's Rule 12(c) motion.

No. 22-30218

# I. Background

## A.  *Chief Walker's Disciplinary Charges Against Adams*

Adams ascended the ranks to Captain over an eighteen-year career in law enforcement with the Harahan Police Department ("HPD"). He had an unblemished disciplinary record during his tenure with HPD. But that changed in October 2019, when HPD Chief of Police Robert Walker ("Chief Walker") determined that Adams was guilty of numerous offenses, including: (1) Conduct Unbecoming an Officer; (2) Unsatisfactory Performance; and (3) False Statement. As a classified civil service employee, Adams was entitled to a fifteen-day appeal window of Chief Walker's disciplinary determinations. *See* La. R. S. § 33:2561.

Adams exercised his right to appeal a week after Chief Walker's charges. However, Chief Walker emailed the Jefferson Parish District Attorney's office ("JPDA") to inform it of his disciplinary action against Adams before he exercised his right. After communicating with Chief Walker, JPDA placed Adams's name on its witness notification list (the "*Giglio* list").[1] Adams alleges that an officer's inclusion on the *Giglio* list is effectively a "death knell to a career in law enforcement." Because the *Giglio* list is at JPDA's discretion, a successful appeal by Adams would not force JPDA to remove his name from the list. With no guaranteed way to get his name off of the *Giglio* list, Adams sued the City.

---

[1] JPDA maintains a witness notification list in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Those cases require JPDA to turn over any evidence favorable to the defendant. This includes evidence that the accused can use to impeach police officers that the prosecution relies on in building its case. Adams avers that his inclusion on the *Giglio* list labels him as a liar or bad cop, which operates as a bar to his continued career in law enforcement.

No. 22-30218

B.    *District Court Proceedings*

Adams brought a civil rights suit against the City for violation of his procedural due process rights, stigma-plus-infringement, and defamation under 42 U.S.C. § 1983. He also included Louisiana state law claims for defamation, invasion of privacy, and negligence. The City moved to dismiss his § 1983 claims under Rule 12(c).[2]

The district court first examined his procedural due process claim. It rejected Adams's assertions that the City unconstitutionally violated his property interest because he was afforded due process when he exercised his right to appeal Chief Walker's determinations. It then evaluated whether the City violated his liberty interests. Notably, it recognized Adams's "liberty interest in his occupation as a law enforcement officer." It reasoned that the Supreme Court supported its conclusion that Adams has a right "to engage in any of the common occupations of life." *Kerry v. Din*, 576 U.S. 86, 94 (2015). It then held that the City violated his right by failing to provide him the "opportunity to be heard at a meaningful time and in a meaningful manner" before reporting his disciplinary charges to JPDA. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

The district court opined that the process that the City provided Adams was unsatisfactory for at least two reasons: (1) he sufficiently alleged that Chief Walker oversaw his disciplinary proceedings and likely had bias against him; and (2) he remained deprived of his liberty interest even if his appeal was successful. Having established that Adams pleaded facts to support that Chief Walker violated his procedural due process rights based

---

[2] The City did not challenge Adams's defamation, invasion-of-privacy, or negligence claims in its Rule 12(c) motion. Therefore, those claims are not addressed in this opinion.

on a deprivation of his liberty interest, it next evaluated whether he could sustain this claim against the City.

The district court allowed Adams's claim against the City to survive the pleading stage. It first reasoned that the municipal liability analysis was straightforward because he alleged that Chief Walker acted pursuant to a policy, practice, and custom of the City. Accordingly, the City was liable because Chief Walker acted as the final policymaker on its behalf. Second, it stated that the City was liable even though JPDA put Adams's name on the list because Chief Walker "set in motion a series of events that would foreseeably cause the deprivation of [Adams's] constitutional rights." *Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999). Ultimately, it viewed the case as one where Chief Walker contrived an investigation against Adams, determined his guilt, and contacted JPDA intending to place his name on the *Giglio* list and end his career in law enforcement. Under that characterization, it determined that Adams successfully alleged a Fourteenth Amendment violation under § 1983.

Finally, the district court addressed Adams's stigma-plus-defamation claim. It held that he failed to allege facts demonstrating the "infliction of a stigma on the person's reputation by a state official" plus "an infringement of some other interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935–36 (5th Cir. 1995). The district court dismissed this claim but granted him leave to amend.[3] The City appealed.

On appeal, the City argues that the district court erred in determining that Adams anchored his due process claim to a cognizable liberty interest. It asks us to reverse this determination and dismiss his claims. If we determine

---

[3] The City does not contest the district court's decision to allow Adams to amend his stigma-plus-defamation claim, so we do not address that claim herein.

No. 22-30218

that Adams has successfully alleged a violation of his liberty interest, it insists that we should still dismiss his claim because it provided him adequate due process.

## II.   Standard of Review

We review "de novo a district court's ruling on a Rule 12(c) motion for judgment on the pleadings." *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

## III.   Discussion

A.   *Standing*

Adams's suit against the City raises unavoidable questions about his legal standing. Despite neither party nor the district court raising these concerns, we are required to address standing before analyzing the merits of his claim. *See Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (explaining that federal appellate courts must evaluate potential jurisdictional defects, even when the parties and the district court fail to raise the issue). Standing requires a plaintiff to satisfy three basic elements: injury in fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This case turns on the causation and redressability elements.[4]

---

[4] Adams's complaint alleges numerous injuries sufficient for standing, including: lost wages, opportunity for additional employment, and irreparable damage to his reputation.

No. 22-30218

On causation, Adams contends that without Chief Walker's sham investigation, JPDA would never have considered placing him on the *Giglio* list. Because Chief Walker did not directly place him on the list, there are concerns about whether a sufficient causal link exists between his placement on the list and Chief Walker's communications with JPDA. *See California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (explaining that if "a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is . . . ordinarily substantially more difficult to establish") (internal quotations and citations omitted). But those concerns are not a barrier to his claim. The Supreme Court has explained that causation is satisfied when a plaintiff's injury results from "the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). Adams alleges that Chief Walker knew that contacting JPDA about his disciplinary charges would lead to his placement on the *Giglio* list. In fact, he asserts that was the primary reason for his alleged sham investigation. Thus, his injury stems from the "predictable effect" of Chief Walker's actions and the causal link is sufficiently preserved for the purposes of standing. *Id.*

That leaves redressability, which is best explained by highlighting what this lawsuit is *not* about. Adams did not only sue to get his name off the *Giglio* list—nor could he because such relief is unobtainable without including JPDA as a defendant. Instead, he primarily sought compensatory and punitive damages.[5] A suit for damages is conceivable against the City because Adams suffered a quantifiable injury from Chief Walker's conduct.

---

[5] Adams's complaint does not foreclose the district court's decision to provide equitable relief in the form of his removal from JPDA's *Giglio* list. But he does not specifically pray for an equitable remedy, leaving it entirely to the district court's discretion.

6

No. 22-30218

Indeed, Adams satisfies the redressability element even if his injuries result in just nominal damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801–02 (2021) ("[A] request for nominal damages satisfies the redressability element of standing[.]"). Because Adams sued the proper party and sought relief within the district court's power to grant, he had standing. *See Lujan*, 504 U.S. at 560–61. We therefore proceed to the merits of his due process claim.

B.    *Whether Adams's Occupational Liberty Interest Exists*

The City urges reversal on two grounds, arguing that: (1) the district court erroneously determined that Adams had a liberty interest in his "future employment as a law enforcement officer"; and (2) even if Adams sufficiently pleaded a cognizable liberty interest, the City legally deprived him of that interest by providing him adequate process.

We first analyze whether Adams's alleged liberty interest in his desired career has any basis in this court. After surveying the applicable caselaw, we conclude that it does.[6] But after careful examination of his complaint and the record, we still hold in the City's favor because it never deprived Adams of his occupational liberty. And without the deprivation of a liberty interest, the City could not have violated Adams's right to procedural due process.

"The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property; and those who seek to invoke its

---

[6] This court's rule of orderliness requires us to recognize liberty interests that we have acknowledged in previous cases. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Accordingly, to state a claim for a due process violation, a plaintiff must allege "(1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law." *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (citing *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991)).

Liberty interests come from two sources: (1) "the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; and (2) "an expectation or interest created by state laws or policies." *Id.* (citations omitted). Despite only providing two sources for discerning liberty interests, the Supreme Court has recognized that "[i]n a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) ("*Bd. of Regents*").

We begin our examination of Adams's liberty interest in pursuing his chosen career with our decision in *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697 (5th Cir. 1968). In that case, three high school students sued a school district in response to a new regulation banning certain types of hairstyles and imposing hair-length requirements. *Id.* at 698–99. Appellants, being aspiring rockstars, claimed that imposing the hair regulations violated their constitutional rights to expression and due process. *Id.* The district court held in the school district's favor, dissolving the students' temporary restraining order, and denying their motion for an injunction. *Id.* at 697.

In affirming the district court, we expressly recognized the students' desire to pursue a commercial venture as musicians. *See id.* at 703 ("We recognize that appellants are professional musicians performing as a musical combo."). We explained that their "right to follow this chosen business or

occupation free from unreasonable governmental interference comes within the liberty and property concepts of the Fifth Amendment." *Id.* (citing *Greene v. McElroy*, 360 U.S. 474 (1959)). We concluded, however, that the "action taken by the school authorities [did] not . . . interfere with [the students'] right to continue in their chosen occupation of professional rock and roll musicians" because their business activity was not eliminated "as a practical matter because of the school's rules and regulations." *Id.* at 704.

We also contemplated occupational liberty interests in *Shaw v. Hosp. Auth.*, 507 F.2d 625, 628 (5th Cir. 1975). There, a plaintiff claimed that his right to procedural due process was infringed by the Hospital Authority's denial of his application for staff membership at a local hospital. *Id.* at 626. Under the applicable bylaws and regulations, staff membership at public hospitals was reserved for "full-practice physicians and duly licensed dentists." *Id.* (citing GA. CODE ANN. § 84-601). Podiatrists, like the plaintiff, did not fall into either category, so membership was never extended to those professionals. *Id.* The crux of the plaintiff's due-process claim was that in denying his staff membership to the hospital, the Hospital Authority interfered with his constitutional right to pursue his chosen vocation, offering him inadequate process before depriving him of his substantive right. *Id.* at 628.

A panel of this court agreed with the plaintiff, holding that "in seeking staff privileges at [the hospital]," he sought to "engage in his occupation as a podiatrist and this [was] a liberty interest protected by the Fourteenth Amendment." *Id.* (citing *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923)). In recognition of his liberty interest in working as a podiatrist, we explained that the plaintiff was "entitled to a hearing conforming to minimal requirements of procedural due process of notice and an opportunity to be heard." *Id.* We ultimately vacated and remanded in his favor, concluding that he never received due process.

We again considered an individual's liberty interest in their business in *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991). In *San Jacinto*, a local arcade owner asserted third-party claims under § 1983 against the city of Waxahachie, Texas and one of its police officers (collectively "Waxahachie"). *Id.* at 699. The arcade owner alleged that Waxahachie deprived her of her right to run her business by using its authority to intimidate customers from frequenting her arcade. *Id.* In her complaint, she asserted that Waxahachie targeted her business because it mostly catered to entertaining large groups of minors. *Id.* The district court held in Waxahachie's favor, granting summary judgment because the plaintiff failed to create a genuine issue of material fact as to whether her liberty or property interests were violated, and that Waxahachie was directly responsible for her arcade's downfall. *Id.* at 699–704.

On appeal, a panel of this court reversed in the plaintiff's favor. We first concluded that she clearly asserted a cognizable Fifth and Fourteenth Amendment right to "operate a legitimate business, free from arbitrary deprivation by local police acting under the color of state law." *Id.* at 702 (citing *Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir. 1983) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the freedom and opportunity that it was the purpose of the [fourteenth] Amendment to secure.") (alteration in original), *clarified on rehearing*, 724 F.2d 490 (5th Cir. 1983), *cert. denied*, 469 U.S. 821 (1984)). After acknowledging her liberty interest, we remanded to the district court to evaluate whether Waxahachie sought to deprive her of this interest without due process of law. *Id.* ("Kacal can succeed in a section 1983 claim by showing that the officers, acting under color of state law, sought to remove or significantly alter her liberty and property interests in [her arcade] without due process of law.").

We later reaffirmed the notion of an occupational liberty interest in *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486 (5th Cir. 2005). In that case, a plaintiff filed a § 1983 suit against Texas Commission on Private Security ("TCPS") officials after they sent threatening letters to patrons of his funeral home business in retaliation for his refusal to apply for a TCPS license. *Id.* at 487. The district court granted TCPS qualified immunity from the suit at the summary judgment stage. A panel of this court reversed that decision, determining that TCPS violated the plaintiff's clearly established constitutional rights by "depriving him of his liberty interest without due process of law." *Id.* at 491.

As we do now, the *Stidham* panel marshaled out numerous Supreme Court and Fifth Circuit decisions in acknowledging the plaintiff's liberty interest in operating a funeral home business. *See id.* (quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915) and citing *Ferrell*, 392 F.2d at 703; *Shaw*, 507 F.2d at 628; and *San Jacinto*, 928 F.2d at 704). The panel ultimately concluded that the plaintiff "identified a protectible liberty interest in pursuing an occupation of his choice." *Id.* at 491–92.

Finally, and most recently, we discussed the right to "freely practice" in one's "chosen profession" in *Ghedi v. Mayorkas*, 16 F.4th 456, 467 (5th Cir. 2021). There, Ghedi brought due process claims against the Attorney General, Department of Homeland Security, Transportation Security Administration ("TSA"), and Customs and Border Protection after he was placed on TSA's selectee list. *Id.* at 456. He alleged that these entities placed him on the selectee list, which subjected him to enhanced screenings at airports, in retaliation to his refusal to be an informant for the Federal Bureau of Investigation. *Id.* He claimed that his placement on the list made it "nearly impossible" for him to continue his "business and humanitarian" work. *Id.* at 467. A federal district court dismissed his claims.

11

We affirmed the district court's decision on appeal, first stating that Ghedi's right to participate in a profession of his choosing had a basis in this court. *Id.* at 467. But we nonetheless held against him because he failed to meet the high burden of proving that the Government deprived him of the right. *Id.* Specifically, we explained that deprivation of occupational liberty only occurs when the government has "effectively foreclosed" the ability for someone to work in his desired field. *Id.* ("Ghedi must plead facts showing that Defendants 'effectively foreclosed' him from practicing his chosen profession to show a deprivation."). Because Ghedi merely pleaded that his placement on the screening list made it "nearly impossible to do" his job, he was not deprived of his right to work in his chosen field. *Id.* (quotation omitted).

In sum, Adams's right to pursue a career in law enforcement is deep-rooted in the Fifth Circuit's jurisprudence. The mere existence of that right, however, is insufficient for Adams to bring his suit against the City. He must also sufficiently allege facts demonstrating that the City violated his occupational liberty interest. As we will demonstrate, he has not met his burden.

C.    *Whether the City Infringed Adams's Liberty Interest*

As he did at the district court, Adams maintains that the City deprived him of his right to a career in law enforcement and the armed forces by prompting JPDA to place him on the *Giglio* list. We disagree.

A plaintiff claiming that his right to work in a common occupation must "plead facts showing that [the defendants] effectively foreclosed him from practicing his chosen profession to show a deprivation." *Ghedi*, 16 F.4th at 467. Our precedent makes clear that a plaintiff's liberty interest remains intact when the Government simply makes his efforts to remain in a given vocation more difficult or even "nearly impossible[.]" *Id.*

No. 22-30218

For example, in *Ferrell*, we explained that the school district did not interfere with the students' rights to seek a musical career by imposing hair-length requirements. 392 F.2d at 703. And in *San Jacinto*, the violation of Kacal's liberty interest stemmed from the police's intentional efforts to discontinue her business entirely. 928 F.2d at 703. Even in *Shaw*, the podiatrist was blocked entirely from conducting his business in a public hospital by the Hospital Authority's refusal to grant him licensure. 507 F.2d at 628. The general principle from these cases is clear: a plaintiff's liberty interest in pursuing a specific profession is only violated if he has been completely prevented from working in that field.

Here, Adams has not sufficiently pleaded that the actions Chief Walker took to get him placed on JPDA's *Giglio* list prevent him from working in his desired careers. On its face, his complaint certainly alleges that his inclusion on the *Giglio* list prohibits him from engaging in two of his chosen professions: (1) a law enforcement officer; and (2) a member of the United States Army Reserve (the "Reserve"). But he repeatedly contradicts those assertions, rendering them nothing more than conclusory statements. And we cannot accept his "threadbare allegations . . . [failing to] give rise to a reasonable inference that the Government has effectively foreclosed" him from serving as a member in those honorable professions. *Ghedi*, 16 F.4th at 467.

First, Adams's complaint states that an officer's inclusion on the *Giglio* list is "a death knell to a career in law enforcement." He also emphasizes that Chief Walker "knew he was destroying careers when he began to . . . send out *Giglio* violation notices to [] JPDA before procedural due process had run through appeals." At no point, however, does he plead that he lost his current or a future job due to Chief Walker's communications with JPDA or his placement on the *Giglio* list. Put differently, the City, through Chief Walker's alleged conduct, may have made Adams's career

13

"nearly impossible to" advance in, but it never effected the prohibition—temporary, permanent, or otherwise—of his career as a police officer. *Ghedi*, 16 F.4th at 467.

In fact, as the record details, the only reason that Adams is not presently a member of HPD is because he agreed to retire from the force as a condition of his settlement with the City during his civil service appeal.[7] Specifically, his agreement with the City provided that Adams would: (1) receive an "absolute nullity" declaration from the civil service tribunal; (2) be reinstated with a return to his rank as Captain; (3) receive backpay calculated to his original date of demotion to Sergeant; (4) have two other disciplinary actions reversed and dismissed; and (5) be permitted to "retire upon his reinstatement with full benefits." So, based on his pleadings at the district court and the record on appeal, Adams has not alleged that the City ever prevented his career as a law enforcement officer with HPD or any other police force. Rather, he ended his career by his own hand and on his bargained-for terms.

Second, Adams flatly concedes that the City did not bar or interfere with his continued employment in the armed forces.[8] His complaint makes troubling allegations that Chief Walker and his assistant, Officer Moody, used a pretextual basis to contact his commanding officers in the Reserve to

---

[7] Notably, Adams's settlement also included terms requiring the City to reach out to several parties that may have been privy to his inclusion on the *Giglio* list, so that they can learn that he was cleared of the disciplinary charges during his appeal process.

[8] The standard in a procedural due process claim based on a government entity's deprivation of someone's liberty interest requires more than the Government's alleged *efforts* to deprive someone of a specific interest. The Government must successfully deprive the plaintiff of a cognizable interest for a claim to accrue. *See supra* Part III.B; *see also Bd. of Regents*, 408 U.S. at 569 ("The requirements of procedural due process apply *only to the deprivation of interests* encompassed by the Fourteenth Amendment's protection of liberty and property." (emphasis added)).

notify them of his pending, falsely brought disciplinary charges with HPD. But he goes on to admit that his employers heard his side of the story and allowed him to retain his employment with the Reserve.

Furthermore, Adams states that the effects of the City's communications with his commanding officers have yet to come to fruition, opting instead to plead numerous speculative problems that the dilemma may cause. Like the plaintiff in *Ghedi*, he may suffer some hardship as he attempts to progress through the ranks in the armed forces, but that potentiality alone is insufficient to hold that the City "effectively foreclosed" his military career altogether. 16 F.4th at 467.

To conclude, the City incorrectly insists that the district court created a novel liberty interest in this case. The district court's decision to acknowledge Adams's right to a career in law enforcement is supported by decades of Fifth Circuit jurisprudence. *See supra* Part III.B.2. We nonetheless hold in the City's favor because Adams has not pleaded that an actual deprivation of this recognized interest occurred by failing to state that the City foreclosed his career in law enforcement or the armed forces. And because the City never violated Adams's liberty interest, we need not address his remaining arguments on the amount and degree of process he received.

## IV. Conclusion

For the foregoing reasons we REVERSE the district court's judgment on the City's Rule 12(c) motion.